28 P.3d 799 (2001)
107 Wash.App. 854
Sara O'DONNELL, Appellant,
v.
ZUPAN ENTERPRISES, INC., A Washington Corporation, Respondent.
No. 25833-1-II.
Court of Appeals of Washington, Division 2.
August 10, 2001.
*800 Derek Jay Vanderwood, Lane Marshall, Vancouver, for Appellant.
Thomas Vincent Dulcich, Heidi L. Mandt, Schwabe, Williamson & Wyatt, P.C., Portland, for Respondent.
SEINFELD, P.J.
In this personal injury action, we hold that a check-out aisle of a grocery store where customers are responsible for unloading their own groceries is a self-service area and, thus, the proprietor is charged with knowledge of the reasonably foreseeable risks inherent in the self-service mode of operation. Consequently, we reverse the order of summary judgment dismissing Sara O'Donnell's personal injury action against Zupan Enterprises, Inc. (Zupan), and we remand for trial.

FACTS
On the afternoon of her twelfth birthday, O'Donnell injured herself when she slipped and fell on a piece of lettuce a few steps inside the check-out aisle at Zupan's Food Pavilion (Zupan's). O'Donnell sued Zupan for negligence. The trial court dismissed her claim, finding that there were no issues of material fact.
O'Donnell appeals, asserting that (1) she was not required to establish that Zupan's had actual or constructive knowledge of the hazard because the check-out area was a self-service area of the store and the hazard was reasonably foreseeable in this area, and (2) she produced evidence sufficient to establish a question of fact as to whether Zupan's exercised reasonable care.
The record shows that Zupan's customers were responsible for unloading their grocery items from their grocery carts onto the conveyor belt at the check-out stand and that in this process it was not unusual for items, such as grapes and blueberries, to fall on the floor. Although there was no evidence of any other falls in this location, Zupan's was aware that debris on the floor could be hazardous.
Zupan's checkers were responsible for keeping the check-out area clear of debris but they had to leave their cash registers to see the check-out aisle floor. The cashiers inspected the check-out aisles only when they had the opportunity to do so, generally between customers, rather than complying with store policy requiring hourly checks.
The Zupan's janitor responsible for sweeping the floors in the check-out area, daily and on request, did not have a sweeping or inspection schedule other than the once-a-day cleaning. Nor did the janitor sweep or inspect the check-out aisles on a consistent basis. Further, although Zupan's required all employees to pick up any debris on the floor, employees could not easily see fallen debris in the check-out aisles.

I. Summary Judgment and Negligence
Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Young v. Key Pharm., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989). Once the moving party shows an absence of material fact, the nonmoving party has the burden to show the existence of a genuine issue of material fact. Ingersoll v. DeBartolo, Inc., 123 Wash.2d 649, 654, 869 P.2d 1014 (1994). We review a grant of summary judgment de novo and consider all facts and reasonable inferences arising from those facts in the light most favorable to the nonmoving *801 party. Rice v. Dow Chem. Co., 124 Wash.2d 205, 208, 875 P.2d 1213 (1994).
Zupan concedes that there was sufficient evidence of injury and proximate cause for purposes of summary judgment. But it challenges the existence of a duty and breach of duty. Iwai v. State, 129 Wash.2d 84, 96, 915 P.2d 1089 (1996).

II. Self-Service Exception
Zupan's had a duty to exercise reasonable care to protect O'Donnell, a business invitee, from harm. See Coleman v. Ernst Home Ctr., Inc., 70 Wash.App. 213, 222-23, 853 P.2d 473 (1993). But to trigger this duty, O'Donnell needed to show that Zupan's had actual or constructive notice of the unsafe condition, Iwai, 129 Wash.2d at 96, 915 P.2d 1089, unless the injury occurred in a self-service area of the store. Pimentel v. Roundup Co., 100 Wash.2d 39, 40, 666 P.2d 888 (1983); Ciminski v. Finn Corp., 13 Wash. App. 815, 818-19, 537 P.2d 850 (1975).
This narrow "self-service" or Pimentel exception to the notice requirement applies where a proprietor's business incorporates a self-service mode of operation and this mode of operation inherently creates an unsafe condition that is continuous or reasonably foreseeable in the area where the injury occurred. Ingersoll, 123 Wash.2d at 653, 869 P.2d 1014; Pimentel, 100 Wash.2d at 40, 666 P.2d 888; Arment v. Kmart Corp., 79 Wash. App. 694, 696, 698-99, 902 P.2d 1254 (1995); Carlyle v. Safeway Stores, Inc., 78 Wash. App. 272, 276, 896 P.2d 750 (1995). Where this exception applies, the law charges the proprietor with actual knowledge of the "foreseeable risks inherent in such a mode of operation"; the proprietor must take "reasonable precautions" against the creation of hazardous conditions that this mode of service might cause. Ciminski, 13 Wash.App. at 819, 537 P.2d 850. The exception applies here if O'Donnell can show that (1) the check-out operation was self-service, (2) it inherently created a reasonably foreseeable hazardous condition, and (3) the hazardous condition that caused the injury was within the self-service area. Ingersoll, 123 Wash.2d at 653-54, 869 P.2d 1014; Wiltse v. Albertson's Inc., 116 Wash.2d 452, 456, 805 P.2d 793 (1991); Arment, 79 Wash.App. at 698, 902 P.2d 1254.
A location where customers serve themselves, goods are stocked, and customers handle the grocery items, or where customers otherwise perform duties that the proprietor's employees customarily performed, is a self-service area. Coleman, 70 Wash.App. at 219, 853 P.2d 473; Ciminski, 13 Wash.App. at 818, 820, 537 P.2d 850. Although customers do not generally remove and replace items from stock in the check-out area, they handle and transfer grocery items from one place to another, presenting an inherent risk of items dropping on the floor and creating a hazard. By requiring customers to unload their grocery items at the check-out area, a task once performed by checkers, Zupan's has created a self-service area. And the hazard, debris in the check-out aisle, is related to the mode of operation in the area where O'Donnell fell.
O'Donnell has presented evidence indicating that the self-service nature of the check-out operations made it reasonably foreseeable that grocery items would fall on the floor and create a hazard. Thus, she need not establish that Zupan's had knowledge of the specific hazardous condition that led to the injury. See Ingersoll, 123 Wash.2d at 654, 869 P.2d 1014.
The facts here are distinguishable from those in Carlyle, where the court declined to apply the Pimentel exception. The Carlyle court held it was not reasonably foreseeable that a customer would slip on shampoo spilled in the coffee aisle because customers did not usually handle shampoo in this area. 78 Wash.App. at 276-77, 896 P.2d 750. In contrast, here O'Donnell presented evidence of Zupan's knowledge that grocery items occasionally fell from carts during the check-out process. Aware of this fact, Zupan's had maintenance policies designed in part to protect against this hazard.
Although application of the self-service exception relieves O'Donnell of the burden of establishing that Zupan's had knowledge of the hazard, it does not create strict liability or require that Zupan disprove negligence. See Pimentel, 100 Wash.2d at 49, 666 P.2d 888. Thus, to survive summary judgment, *802 O'Donnell must also establish that Zupan's failed to exercise reasonable care to prevent her injury. See Pimentel, 100 Wash.2d at 49, 666 P.2d 888.

III. Reasonable Care
In the exercise of reasonable care, a store proprietor must inspect for dangerous conditions and provide such repair, safeguards, or warning as may be reasonably necessary to protect its customers under the circumstances. Iwai, 129 Wash.2d at 96, 915 P.2d 1089. Although this standard of care applies regardless of the mode of operation, the type of precautions that are "reasonable" depends on "the nature and the circumstances surrounding the business conduct[]," including the mode of operation. Ciminski, 13 Wash.App. at 819, 537 P.2d 850.
The self-service mode of operation might require a proprietor to implement protections that are not necessary under other circumstances, such as installing special types of flooring or implementing housekeeping or inspection procedures that reduce the risk of harm and enable the proprietor to discover and remove hazardous conditions customers create. Ciminski, 13 Wash.App. at 820, 537 P.2d 850. The reasonableness of a proprietor's methods of protection is a question of fact. Ciminski, 13 Wash.App. at 820-21, 537 P.2d 850.
Although the record here does not show that anyone else has fallen in the check-out area, it does show that Zupan's was aware that grocery items sometimes fell on the check-out aisle floor, posing a potential hazard. The record also shows that despite a policy requiring all store personnel to remove any debris on the floor, few store employees could actually see into the check-out aisles to ensure they were safe and, despite a policy requiring hourly checks, the employees followed no set cleaning or inspection schedule. This evidence raises questions of material fact as to whether Zupan's exercised reasonable care to prevent injuries caused by items dropped by customers in the check-out area.
In summary, (1) the check-out aisle is a self-service area; (2) a jury could find that it was reasonably foreseeable that debris would fall into the aisle and that Zupan's procedures were inadequate in light of this known risk; and (3) Zupan concedes that the evidence of injury and proximate cause is sufficient to defeat a summary judgment motion. Thus, the trial court erred when it dismissed O'Donnell's claims. Consequently, we reverse and remand for further proceedings.
We concur: BRIDGEWATER, J., and QUINN-BRINTNALL, J.