[No. 32840-2-II. Division Two. September 6, 2006.]

TERESA SCHMIDT, *Appellant*, v. TIMOTHY P. COOGAN ET AL., *Respondents*.

*Dan'l W. Bridges* (of *Law Offices of Dan'l W. Bridges*), for appellant.

*Paul A. Lindenmuth* (of *Ben F. Barcus & Associates, P.L.L.C.*), for respondents.

---

---

¶1 ARMSTRONG, J. — Teresa Schmidt hired attorney Timothy Coogan to represent her in her slip-and-fall claim against a grocery store. The case was dismissed when Coogan failed to serve the proper defendant. Schmidt then sued Coogan for malpractice and the jury awarded her $212,000 in damages. The trial court granted Coogan's motion for a new trial on damages. Both parties appeal. Schmidt argues that the trial court erred in overturning the jury's damage award; Coogan argues that Schmidt failed to prove the elements of her underlying claim, specifically that the store had notice of the slippery condition. We agree with Coogan and, therefore, reverse and remand for dismissal.

## FACTS

¶2 In December 1995, Teresa Schmidt went to a grocery store to buy shampoo. As she walked down the shampoo aisle, Schmidt stepped in a puddle of shampoo and slipped and fell. After her sister and a bystander helped her up, Schmidt shopped for a few more items and then waited in the checkout line for about 10 minutes before reaching a checker.

¶3 Schmidt told the checker of her fall and the spilled shampoo, which she could see from her position next to the register. The store employee did not call anyone to clean the spill while Schmidt was there, and during her brief visit to the store, Schmidt saw no one cleaning the spill or inspecting the aisles for spills. She left immediately after reporting the incident and paying for her groceries.

¶4 Afterward, Schmidt suffered pain and numbness in her arm, migraines, and back spasms. These symptoms prevented her from engaging in her usual activities, such as playing with her child and playing softball. At the trial eight years later, Schmidt still had many of the symptoms.

¶5 Schmidt knew Coogan through her fiancé, John MacMonagle, who had been an attorney in Coogan's office. Coogan agreed to take Schmidt's case against the grocery store. And, during this time between the fall and the trial, Schmidt took a job at Coogan's firm as a receptionist.

¶6 Schmidt presented evidence that Coogan failed to investigate and prepare her case. In addition, when she asked him about the case, Coogan responded with profanity, telling Schmidt not to worry about it, that he was the lawyer, and that he had it under control. On the last day to file the complaint within the statute of limitations, Coogan still had not filed. After talking with Coogan, MacMonagle drafted the complaint and filed it over Coogan's signature.

¶7 The complaint, however, named the wrong party as owner of the store. Coogan attempted to amend the complaint and name the proper party, but for reasons not clear from the record, the attempt failed and the claim was ultimately dismissed.

¶8 Schmidt then sued Coogan for malpractice. Schmidt testified about the incident in the store, but she presented no evidence that the store had actual knowledge of the spilled shampoo before she fell. Nor did she provide evidence of how long the spill had been there or what the store's inspection routine, if any, was.

¶9 At the end of Schmidt's case, Coogan moved for judgment as a matter of law. He argued in part that

Schmidt had failed to prove an element of the underlying slip and fall claim, specifically that the store had actual or constructive knowledge of the spill. The trial court denied the motion. Coogan renewed the motion after the jury verdict. The trial court granted the motion for a new trial on the issue of damages only.

## ANALYSIS

¶10 We review a trial court's decision to deny judgment as a matter of law de novo. *Hizey v. Carpenter*, 119 Wn.2d 251, 271-72, 830 P.2d 646 (1992). Judgment as a matter of law is proper only when the court can find, " 'as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict.' " *Goodman v. Goodman*, 128 Wn.2d 366, 371, 907 P.2d 290 (1995) (quoting *Brashear v. Puget Sound Power & Light Co.*, 100 Wn.2d 204, 208-09, 667 P.2d 78 (1983)). Under the "case within a case" principle, the plaintiff in a legal malpractice claim must prove that, but for the attorney's negligence, the plaintiff would probably have prevailed in the underlying claim. *See Daugert v. Pappas*, 104 Wn.2d 254, 263, 704 P.2d 600 (1985).

¶11 When a plaintiff sues a business owner for failing to correct a dangerous condition, the plaintiff must show either that the defendant caused the condition or that the defendant had actual or constructive notice of the condition. *See Pimentel v. Roundup Co.*, 100 Wn.2d 39, 49, 666 P.2d 888 (1983). The "self-service" exception eliminates this notice requirement where "the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." *Pimentel*, 100 Wn.2d at 49.

¶12 At oral argument, Schmidt focused on the self-service exception. Courts have applied this narrow exception only when the slip-and-fall happens in an area where there is constant handling of slippery products. *See, e.g., Morton v. Lee*, 75 Wn.2d 393, 397-98, 450 P.2d 957 (1969)

(outdoor produce display); *O'Donnell v. Zupan Enters., Inc.*, 107 Wn. App. 854, 856, 28 P.3d 799 (2001) (grocery store check-out aisle); *Ciminski v. Finn Corp.*, 13 Wn. App. 815, 823-24, 537 P.2d 850 (1975) (cafeteria buffet line); *cf. Carlyle v. Safeway Stores, Inc.*, 78 Wn. App. 272, 276, 896 P.2d 750 (1995). In *Carlyle*, the plaintiff asked the court to extend the self-service exception to encompass a shampoo spill in the coffee aisle. Division Three, noting that the produce department was the most hazardous area of the store and that neither the coffee nor the shampoo was kept in the produce section, declined to do so. *Carlyle*, 78 Wn. App. at 278.

¶13 But Schmidt attempts to distinguish *Carlyle*. According to Schmidt, *Carlyle* turns on the fact that the spilled shampoo was in the coffee aisle; here, the spilled shampoo was in the shampoo aisle, a more foreseeable location for a shampoo spill. But shampoo in the coffee aisle was not a critical fact in *Carlyle*. *Carlyle* mentioned the coffee aisle location in discussing the distance of the spill from the produce section. Later, the court discussed the coffee location in its constructive notice analysis. *See Carlyle*, 78 Wn. App. at 278. The other distinguishing factors noted by Schmidt—the frequency of inspections and the size of the spill—are relevant to whether the store had constructive notice but not to whether the shampoo aisle is such an inherently hazardous section to justify the self-service exception to showing knowledge.

¶14 Schmidt also reasons that a slip-and-fall is reasonably foreseeable in the shampoo aisle because a customer might open a shampoo bottle to smell it and accidentally spill it in front of the shelf. If so, most areas of modern grocery stores would be especially hazardous and qualify for the self-service exception. Yet the courts have never intended the exception to be so broadly applied. *See Wiltse v. Albertson's, Inc.*, 116 Wn.2d 452, 461, 805 P.2d 793 (1991).

¶15 As *Ingersoll v. DeBartolo, Inc.*, explained,

Self-service has become the norm throughout many stores. However, the *Pimentel* rule does not apply to the entire area of

the store in which customers serve themselves. Rather, it applies if the unsafe condition causing the injury is "continuous or foreseeably inherent in the nature of the business or mode of operation."

*Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 653-54, 869 P.2d 1014 (1994) (quoting *Wiltse*, 116 Wn.2d at 461). We decline to apply the self-service exception to the shampoo spill here.

■ ■ ¶16 Accordingly, Schmidt had to prove that the grocery store had actual or constructive notice of the spilled shampoo before her accident. *See Pimentel*, 100 Wn.2d at 49. "The constructive notice rule requires the plaintiff to establish how long the specific dangerous condition existed in order to show that the proprietor should have noticed it." *Wiltse*, 116 Wn.2d at 458. Schmidt has argued three pieces of evidence to this effect: (1) that the spill was visible from the cash registers when she informed an employee about it; (2) that she saw no employees in the aisles checking for spills; and (3) that after she reported the spill, nothing was done about it.

¶17 None of this evidence satisfies Schmidt's burden. The spill's visibility from the cash registers does not tell us how long the spill had been there before Schmidt's fall. That Schmidt saw no employees checking for spills does not tell us what the store's routine for inspection was or whether the routine was reasonable within industry standards. Nor does the evidence tell us where Schmidt's fall occurred within the routine's timing. In short, no reasonable juror could infer from the fact that Schmidt witnessed no inspection that the store's inspection practices were either not reasonable or were not being followed. *See Carlyle*, 78 Wn. App. at 278.

¶18 In *Carlyle*, there was evidence that Safeway employees conducted inspections from once per hour to two or three times per shift. Division Three affirmed summary judgment for Safeway, holding that the plaintiff had presented no evidence that these procedures were inadequate. *Carlyle*, 78 Wn. App. at 278. Schmidt offered no evidence

that the risk of shampoo spills was so great that the failure to inspect the aisle within the short time frame she was there established a lack of reasonable care. And that nobody cleaned up the spill after she reported it to the checker is irrelevant because she testified that she spoke with the checker while her groceries were being checked and then left immediately after paying.

¶19 Still, Schmidt suggests that we employ a more lenient standard to Schmidt's obligation to prove her underlying case. She points to Coogan's failure to investigate and his last minute filing of the complaint. Schmidt cites no authority to support this argument. More importantly, she offered no evidence that her malpractice attorney was frustrated in proving the underlying slip-and-fall by Coogan's delay. We would be more sympathetic to her position if she had shown that evidence of the store's actual or constructive notice had been available to Coogan and was not available to her malpractice attorney. In short, we find neither legal nor equitable grounds to lower Schmidt's burden of proof because of the nature of Coogan's malpractice.

¶20 Because Schmidt failed to prove the notice element of her underlying slip-and-fall case, Coogan was entitled to judgment as a matter of law and we need not discuss the other issues. We reverse and remand for the action to be dismissed.

VAN DEREN, A.C.J., and HUNT, J., concur.