FILED
COURT OF APPEALS
DIVISION II

2013 AUG 13 AM 10: 28

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| AVRILIRENE TAVAI and THOMAS TAVAI, and their marital community, | No. 43099-1-II |
| Appellants, | |
| v. | |
| WALMART STORES, INC., a Delaware entity doing business in the State of Washington with its corporate headquarters in Bentonville, Arkansas, | PUBLISHED OPINION |
| Respondent. | |

QUINN-BRINTNALL, J. — In a slip-and-fall premises liability case, the plaintiff ordinarily must prove that the defendant had notice of the dangerous condition that caused the fall. Under the limited "self-service" exception to this requirement, notice need not be shown if the dangerous condition is continuous or foreseeably inherent in the nature of the defendant's business or mode of operation. The appellant here slipped on a wet floor in a Walmart store about 15 feet away from a check-out counter. Because the appellant failed to provide evidence that Walmart had notice of the wet floor or a condition resulting in a continuous danger of the floor being wet in the area where she fell, the trial court properly dismissed the case on summary judgment. We affirm.

## FACTS

Avrilirene Tavai was shopping at a Walmart store on February 2, 2008. About 15 feet away from a check-out counter, Tavai slipped on the floor and fell. Tavai noticed water on the floor where she fell. Tavai went to customer service and filled out an accident report.

Tavai's teenage daughter had accompanied Tavai on the shopping trip, but she was some distance ahead of her when Tavai fell. Tavai's daughter said she had not noticed any water on the floor when she walked through the area where her mother had fallen. She first noticed water on the floor after helping her mother up. She did not see any items in the area indicating where the water came from.

An assistant manager for Walmart investigated the area where Tavai fell. The manager saw a small area of water on the floor. The manager did not see any debris, including water bottles or cups, in the area where Tavai fell. The manager did not notice any wet footprints or tracks around the area. None of the employees the manager spoke to saw Tavai fall or knew about the water on the floor. Surveillance video did not show the area where Tavai fell. The manager was unable to determine how the water got on the floor.

Tavai sued Walmart on August 16, 2010 for injuries suffered from the fall. Walmart moved for summary judgment dismissal, arguing that Walmart did not have notice of the wet floor and that the "self-service" exception to the notice requirement did not apply. The trial court granted Walmart's motion. Tavai moved for reconsideration, which the trial court denied. Tavai appeals from the subsequent dismissal of her case.

No. 43099-1-II

## ANALYSIS

STANDARD OF REVIEW AND PREMISES LIABILITY STANDARD

Summary judgment is proper if no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. CR 56(c). To succeed on a summary judgment motion, the moving party must first show the absence of an issue of material fact. *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 654, 869 P.2d 1014 (1994). The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Ingersoll*, 123 Wn.2d at 654. A defendant may move for summary judgment on the ground that plaintiff lacks competent evidence to support her claim. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). When considering a summary judgment motion, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). On appeal of summary judgment, the standard of review is de novo, and we perform the same inquiry as the trial court. *Lybbert*, 141 Wn.2d at 34.

A cause of action for negligence requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). In a premises liability action, a land possessor's duty of care is governed by the entrant's common law status as an invitee, licensee, or trespasser. *Tincani*, 124 Wn.2d at 128. Walmart does not dispute that Tavai was an invitee. Our Supreme Court has adopted the view of the *Restatement (Second) of Torts* as to a landowner's duty of care to an invitee. *Curtis v. Lein*, 169 Wn.2d 884, 890, 239 P.3d 1078 (2010). The *Restatement* provides,

3

> Dangerous Conditions Known to or Discoverable by Possessor
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343 (1965).

THE "SELF-SERVICE" OR *PIMENTEL* EXCEPTION

In general, the duty to exercise reasonable care to protect invitees from harm is triggered upon the invitee's showing that the premise owner had actual or constructive notice of the hazardous condition. *O'Donnell v. Zupan Enters., Inc.*, 107 Wn. App. 854, 858, 28 P.3d 799 (2001), *review denied*, 145 Wn.2d 1027 (2002). Such "notice need not be shown, however, when the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 49, 666 P.2d 888 (1983). This is the "self-service" or *Pimentel* exception. *O'Donnell*, 107 Wn. App. at 858. The rationale for the rule is that "'when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves.'" *Pimentel*, 100 Wn.2d at 47-48 (quoting *Jasko v. F.W. Woolworth Co.*, 177 Colo. 418, 420-21, 494 P.2d 839 (1972)). Tavai contends that the *Pimentel* exception applies and precludes summary judgment.

"*Pimentel* is a limited rule for self-service operations, not a per se rule," and is "limited to specific unsafe conditions that are continuous or foreseeably inherent in the nature of the business or mode of operation." *Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 461, 805 P.2d 793 (1991). Self-service areas include locations "where customers serve themselves, goods are

4

stocked, and customers handle the grocery items, or where customers otherwise perform duties that the proprietor's employees customarily performed." *O'Donnell*, 107 Wn. App. at 859. But the "*Pimentel* rule does not apply to the entire area of the store in which customers serve themselves." *Ingersoll*, 123 Wn.2d at 653. There must be a relation between the hazardous condition and the self-service mode of operation of the business. *Carlyle v. Safeway Stores, Inc.*, 78 Wn. App. 272, 277, 896 P.2d 750, *review denied*, 128 Wn.2d 1004 (1995).

Case law illustrates the limited reach of the *Pimentel* exception. In *Ingersoll*, the plaintiff slipped and fell in the common area of the Tacoma Mall. 123 Wn.2d at 650. On appeal, the plaintiff argued that the *Pimentel* exception precluded summary judgment. Our Supreme Court rejected her argument. The court reasoned that the plaintiff "failed to produce any evidence from which the trier of fact could reasonably infer that the nature of the business and methods of operation of the Mall are such that unsafe conditions are reasonably foreseeable in the area in which she fell." *Ingersoll*, 123 Wn.2d at 654. The record disclosed "only that there is more than one food-drink vendor service in the Mall, that some such vendors do not provide seating and that some patrons carry the products to benches for consumption." *Ingersoll*, 123 Wn.2d at 654. This evidence was insufficient to withstand a motion for summary judgment.

*Arment v. Kmart Corp.*, 79 Wn. App. 694, 902 P.2d 1254 (1995), is similar. There, the plaintiff slipped on a drink spill in the menswear department of the store. *Arment*, 79 Wn. App. at 695. The plaintiff provided evidence showing that the store operated a restaurant in the same general area with a drink dispenser. *Arment*, 79 Wn. App. at 697. Division One of this court affirmed the summary judgment dismissal of the case because the plaintiff did not provide sufficient evidence that Kmart encouraged patrons to consume food or drink throughout the store. *Arment*, 79 Wn. App. at 696, 699. In distinguishing the case from a Kansas case, this

court reasoned that the plaintiff failed to produce evidence showing that Kmart allowed or encouraged patrons to remove food and drink from the in-store cafeteria and consume it in the retail area. *Arment*, 79 Wn. App. at 699-700.

Likewise, Division Three of this court affirmed a summary judgment dismissal in *Carlyle*. 78 Wn. App. at 274. There, the plaintiff slipped on a shampoo spill in the coffee section of a Safeway store. *Carlyle*, 78 Wn. App. at 274. This court rejected the plaintiff's argument that there was an issue of fact under the *Pimentel* exception on whether the leaking shampoo bottle was reasonably foreseeable. *Carlyle*, 78 Wn. App. at 276. This court reasoned that the plaintiff "failed to produce any evidence from which it could reasonably be inferred that the nature of Safeway's business and its methods of operation are such that unsafe conditions are reasonably foreseeable in the area in which she fell." *Carlyle*, 78 Wn. App. at 277. According to deposition testimony from two Safeway employees, one or two spilled objects occurred per eight-hour shift and employees were in the habit of inspecting the store hourly. *Carlyle*, 78 Wn. App. at 278. The produce area was the messiest. *Carlyle*, 78 Wn. App. at 278. The shampoo was not stored in the coffee aisle. *Carlyle*, 78 Wn. App. at 278. Thus, these facts were insufficient to raise an issue that unsafe conditions were reasonably foreseeable in the area where the plaintiff fell. *Carlyle*, 78 Wn. App. at 278.

In contrast to the foregoing cases, *O'Donnell* illustrates what evidence is sufficient under the *Pimentel* exception to survive a motion for summary judgment. In that case, the plaintiff fell a few steps inside the check-out aisle at a grocery store. *O'Donnell*, 107 Wn. App. at 856. We concluded that the plaintiff presented evidence showing that the self-service nature of the check-out operations made it reasonably foreseeable that grocery items would fall on the floor and create a hazard. *O'Donnell*, 107 Wn. App. at 859. In distinguishing *Carlyle*, we noted that the

plaintiff presented evidence that the defendant knew that grocery items occasionally fell from carts during the check-out process. *O'Donnell*, 107 Wn. App. at 859-60.

Tavai argues that because the issue involves foreseeability, the issue is necessarily a question of fact for the jury. But *Pimentel* reaffirmed that most plaintiffs still need to show that a proprietor had actual or constructive notice of an unsafe condition. *Charlton v. Toys "R" Us - Del., Inc.*, 158 Wn. App. 906, 918, 246 P.3d 199 (2010). Contrary to Tavai's suggestions, "[w]hether the *Pimentel* exception applies is often determined as a matter of law." *Charlton*, 158 Wn. App. at 918.

Tavai argues that she presented sufficient evidence from which a jury could reasonably find the *Pimentel* exception satisfied. She relies primarily on the following evidence: Walmart sells bottled water and groceries, she fell about 15 feet from a check-out counter, and there were 51 other reported occurrences of slip-and-fall injuries at the store between 2005 and 2007. Concerning the 51 incidents, 23 were related to liquid on the floor. Seven of the complaints concerned slips on wet floors at a check-out lane.

The problem with Tavai's evidence is that it does not show a relation between a self-service mode of operation at Walmart and the wet floor she slipped on. Tavai was 15 feet away from the check-out counter so the hazard that usually arises from customers unloading groceries was not present. *See O'Donnell*, 107 Wn. App. at 859 ("in the check-out area, [customers] handle and transfer grocery items from one place to another, presenting an inherent risk of items dropping on the floor and creating a hazard"). While Tavai presented evidence that other people slipped in the store in the past, she did not provide evidence that other people slipped in the particular area she slipped in. This is inadequate. "[T]o invoke the *Pimentel* exception, a

plaintiff must present some evidence that the unsafe condition in *the particular location* of the accident was reasonably foreseeable." *Arment*, 79 Wn. App. at 698 (emphasis added).

Tavai argues that this case is distinguishable from cases rejecting application of the *Pimentel* exception. She contends that the puddle of water she slipped on was reasonably foreseeable because she was 15 feet from the check-out lanes and the store sold "grab-and-go" drinks. Reply Br. of Appellant at 4. But the drinks in question were sold in sealed bottles, not open cups, and Tavai presents no evidence that people spilled liquids on the way to the check-out counter. Tavai did not provide evidence that Walmart sold drinks in open containers or that customers were allowed or encouraged to open drinks before purchase. The mere fact that Walmart sells liquids is insufficient to meet the *Pimentel* exception. The evidence does not show that Tavai was in a "self-service" area where spills were reasonably foreseeable due to the mode of operation of the store. Accordingly, this case is unlike *O'Donnell* and more like *Ingersoll*, *Arment*, and *Carlyle*.

We conclude that the *Pimentel* exception did not preclude summary judgment.

NOTICE OF A DANGEROUS CONDITION

Alternatively, Tavai argues that she provided sufficient evidence of notice of a dangerous condition to raise an issue of fact. She specifically argues that "Wal-Mart knew or should have known that its floor was unreasonably slippery and that they were negligent for tolerating that condition." Br. of Appellant at 23. We disagree.

Generally, a business owner is liable to an invitee for an unsafe condition on the premises if the condition was caused by the proprietor or his employees, or the proprietor had actual or constructive notice of the unsafe condition. *Fredrickson v. Bertolino's Tacoma, Inc.*, 131 Wn. App. 183, 189, 127 P.3d 5 (2005), *review denied*, 157 Wn.2d 1026 (2006). Constructive notice

arises where the condition has existed for such time as would have afforded the proprietor sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger. *Ingersoll*, 123 Wn.2d at 652. Ordinarily, it is a question of fact for the jury whether, under all of the circumstances, a defective condition existed long enough so that an owner exercising reasonable care would have discovered it. *Fredrickson*, 131 Wn. App. at 189.

Tavai does not argue that Walmart should have discovered the water on the floor before she slipped on it. Instead, she argues that the dangerous condition was the floor itself because it was especially slippery when wet. Because the floor was especially slippery when wet, Tavai contends Walmart was negligent in its choice of flooring. As supporting evidence, Tavai cites a report from an expert who measured the slip resistance of the floor at Walmart when it was wet. The expert opined that when the floor was wet, it **"posed a serious slip hazard"** and was equivalent to "ice and compact snow." Clerk's Papers at 166. Tavai also cites as evidence 51 other reported falls at the Walmart over an earlier two-year period, arguing that Walmart had notice that its floor was dangerous through previous accidents. She contends this raises an issue of fact requiring a trial.

Walmart contends we should not consider Tavai's argument because Tavai raised this theory for the first time in her motion for reconsideration below.[1] Walmart is incorrect. Tavai raised this theory below in her response to Walmart's motion for summary judgment. Thus, the issue is properly before us.

---

[1] Additionally, Walmart argues that summary judgment was proper because Tavai fails to raise an issue of fact on whether Walmart failed to exercise reasonable care. Because we conclude the *Pimentel* exception is inapplicable and that Tavai does not show that Walmart had notice of a dangerous condition, we do not address this issue.

Nevertheless, we reject Tavai's argument that Walmart was negligent in the selection of its flooring. Tavai does not provide adequate evidence to support her theory. The expert opinion relied on by Tavai stated that the floor was slip resistant when dry. While the same expert opined that the floor was especially slippery when wet, the expert did not say what other flooring materials (if any) were slip resistant when wet. Tavai presents no evidence that other flooring material would have been slip resistant or even less slippery when wet. Accordingly, she did not meet her burden to support her theory that Walmart's selection of its flooring was negligent.

SPOLIATION

Last, Tavai argues that she is entitled to a spoliation inference because Walmart did not preserve video recordings taken on the day of Tavai's fall. In the store, several security cameras were suspended from the ceiling. After Tavai retained counsel, she requested any video footage depicting her, including that of her fall.[2] Walmart did not preserve any video footage. Tavai's counsel represented that Walmart told him there was nothing relevant to preserve. The trial court ruled that a spoliation inference was unjustified.

Spoliation is the intentional destruction of evidence. *Henderson v. Tyrrell*, 80 Wn. App. 592, 605, 910 P.2d 522 (1996). The Washington Supreme Court recognized the following rule on spoliation:

> [W]here relevant evidence which would properly be a part of a case is within the control of a party whose interests it would naturally be to produce it and he fails to do so, without satisfactory explanation, the only inference which the finder of fact may draw is that such evidence would be unfavorable to him.

*Pier 67, Inc. v. King County*, 89 Wn.2d 379, 385-86, 573 P.2d 2 (1977).

---

[2] The record does not reveal exactly when this request was made. Because the request was made by Tavai's counsel, it was likely after Tavai sued Walmart, which was in August 2010. This would have been over two years after Tavai fell on February 8, 2008.

10

Ordinarily, we review the trial court's decision on spoliation for abuse of discretion. *Henderson*, 80 Wn. App. at 604. Here, because the issue was decided through summary judgment, our review is de novo. *Davis v. Baugh Indus. Contractors, Inc.*, 159 Wn.2d 413, 416, 150 P.3d 545 (2007) ("Trial court rulings in conjunction with a motion for summary judgment are reviewed de novo.").

In deciding whether to apply a spoliation inference, this court has used two general factors: (1) the potential importance or relevance of the missing evidence and (2) the culpability or fault of the adverse party. *Henderson*, 80 Wn. App. at 607. Whether the missing evidence is important or relevant depends on the particular circumstances of the case. *Henderson*, 80 Wn. App. at 607. In weighing the importance of the evidence, we consider whether the adverse party was given an adequate opportunity to examine it. *Henderson*, 80 Wn. App. at 607. As for culpability, we examine whether the party acted in bad faith or conscious disregard of the importance of the evidence or whether there was some innocent explanation for the destruction. *Henderson*, 80 Wn. App. at 609. Another important factor is whether the party violated a duty to preserve the evidence. *Henderson*, 80 Wn. App. at 610.

Applying the two-part analysis here, a video recording of the area where Tavai fell would have likely been important because it could have shown how the water got on the floor and how long it had been there. However, while Walmart had many surveillance cameras, Tavai has failed to establish that surveillance video captured the area where she fell. According to the assistant manager at the store, the surveillance video did not cover the area where Tavai fell. In addition, the expert Tavai retained, who examined the camera security room and the views of the cameras, agreed that if Tavai was correct about where she fell, a camera would not have captured

the fall. Thus, the importance of any video footage was small because the area where Tavai fell was likely not captured.

As to culpability, Tavai asserts that Walmart admitted that its policies are to preserve video when there is an accident and, thus, should have retained the video. But Tavai's citation to a declaration by her attorney does not support this assertion. There is nothing in the record before us concerning what Walmart's policy is on retention of video footage. The record does not establish when Tavai requested Walmart to retain its footage. It is also unclear when the video was deleted. There is no evidence that it was deleted after Tavai asked for the footage.[3] Thus, it may have been deleted before any request, which because it did not contain video of the area of the fall, would tend to show a lack of bad faith. *See Ripley v. Lanzer*, 152 Wn. App. 296, 326, 215 P.3d 1020 (2009) (rejecting spoliation argument that broken scalpel handle was discarded in bad faith in part because plaintiff's lawsuit had not commenced and no request had been made to retain the handle). We decline to require store premises to retain all video anytime someone slips and falls and files an accident report. On this record, Tavai does not show that Walmart acted in bad faith.

---

[3] We decline to opine on Tavai's argument that if there was possibly relevant evidence of the ancillary surveillance camera recordings, that Walmart was obligated to preserve it or commit spoliation of evidence.

No. 43099-1-II

Because the two factors do not weigh in favor of a spoliation inference, we conclude that the trial court did not err in rejecting Tavai's claim that Walmart destroyed evidence in bad faith and that she was entitled to a spoliation inference.[4]

We affirm.

*Quinn-Brintnall, J.*

QUINN-BRINTNALL, J.

We concur:

*Johanson, A.C.J.*

JOHANSON, A.C.J.

*Forbes, J.P.T.*

FORBES, J.P.T.

---

[4] We reject Walmart's categorical argument that even if a camera had captured Tavai's fall, it owed no duty to preserve the evidence following Tavai's filing of an accident report with the store. One purpose of the accident report was to place Walmart on notice of a potential claim. Upon the filing of an accident report, Walmart must act with good faith concerning the preservation of direct video evidence of a reported accident or fall.

13