IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICA CRAIG, | ) | No. 33985-8-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — A rattlesnake bit Mica Craig while he was shopping at Walmart's outdoor garden center in Clarkston, Washington. Mr. Craig sued Wal-Mart Stores, Inc., doing business as Walmart, on a theory of premises liability. Walmart successfully moved for summary judgment. Mr. Craig appeals.

Walmart argues it lacked actual or constructive notice of any rattlesnake incident on its premises. Mr. Craig responds that rattlesnakes are well known to live in the undeveloped lots adjacent to the outdoor garden center, and Walmart's decision to operate an outdoor garden center in such an area created the risk that a rattlesnake might enter the garden area and bite a customer. Mr. Craig argues that by creating such a risk,

Walmart owes him a duty of reasonable care to prevent his injury. We agree and, therefore, reverse the trial court.

## FACTS

### A.   OVERVIEW OF INJURY

In May 2012, Mr. Craig entered the garden center of Walmart to purchase a bag of mulch. The garden center was an outdoor open air section of the store located in the parking lot. Other customers were also shopping in the outdoor garden center at the time. Mr. Craig saw bags of mulch stored on wooden pallets. He bent down near the bags to brush aside what he thought was a stick obscuring a price tag. The "stick" turned out to be a rattlesnake, and it bit his hand. Mr. Craig immediately went to a medical clinic, and eventually went to a hospital where he received appropriate care and treatment.

### B.   PROCEDURE BELOW

Mr. Craig brought suit against Walmart. He alleged premises liability, among other causes of action. After brief discovery, Walmart moved for summary judgment dismissal of Mr. Craig's premises liability claim.

Walmart asserted it lacked actual or constructive notice of any rattlesnake danger. Specifically, it asserted its Clarkston store had been in operation since September 2009, that over four million customers had visited the store prior to May 2012, and that there had never been a "reported incident involving a snake." Clerk's Papers (CP) at 34. Walmart also described various efforts it used to decrease the risk of dangerous incidents,

2

such as routinely sweeping and checking the garden center area and hiring a company to provide monthly pest control.

In response, Mr. Craig submitted declarations, including one from a middle-aged man who had lived in Clarkston his entire life, and another from a snake expert. The layperson asserted, "it is common knowledge that rattlesnakes are prevalent in areas around the levies of [Clarkston], including in the immediate vicinity of the Clarkston, WA Walmart." CP at 217. The expert asserted that there were undeveloped lots immediately adjacent to Walmart's outside garden center, and that rattlesnakes could live in those lots and the general area. He also posited various steps that Walmart could have taken, but did not, which would have reduced the risk of a rattlesnake getting into the outdoor garden center area.

Mr. Craig argued that the *Pimentel*[1] self-service exception applied. He argued that Walmart's outdoor garden center used a self-service method of operation, and that Walmart's choice to use such a method of operation in rattlesnake country created the unsafe condition.

The trial court granted Walmart's summary judgment motion. In dismissing Mr. Craig's premises liability claim, the trial court concluded:

---

[1] *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983).

[T]o invoke the Pimentel exception, a plaintiff must present some evidence that the unsafe condition *in the particular location* of the accident was reasonably foreseeable. There is simply no evidence whatsoever of any snake activity of any kind anywhere on the premises of this particular Walmart store and a complete lack of evidence that Walmarts [sic] mode of business operations would somehow encourage or promote invitees to encounter and interact with [a rattlesnake].

CP at 279 (emphasis added) (citation omitted).[2]

Mr. Craig appeals.

## ANALYSIS

A. SUMMARY JUDGMENT STANDARD

"'Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Berger v. Sonneland*, 144 Wn.2d 91, 102, 26 P.3d 257 (2001) (quoting *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)). "The moving party bears the burden of demonstrating there is no genuine dispute as to any material fact." *Id.* "The appellate court engages in the same inquiry as the trial court when reviewing an order for summary judgment." *Id.* "All facts and reasonable inferences are considered in a light most favorable to the nonmoving party." *Id.* at 102-03. "All questions of law are reviewed de novo." *Id.* at 103.

---

[2] Although Mr. Craig asserted causes of action other than premises liability, the parties treated the summary judgment order as a final order dispositive of all claims.

B. PREMISES LIABILITY AND THE *PIMENTEL* EXCEPTION TO NOTICE

In premises liability actions, a person's status as an invitee, licensee, or trespasser determines the scope of the duty of care owed by the possessor of that property. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994). Walmart does not dispute that Mr. Craig was a business invitee.

A business invitee must usually show that the owner of the premises had actual or constructive notice of the hazardous condition for liability to attach. *Tavai v. Walmart Stores, Inc.*, 176 Wn. App. 122, 128, 307 P.3d 811 (2013). But such notice need not be shown if the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable. *Id.* This is known as the *Pimentel* exception. *Id.*

The *Pimentel* exception is a limited rule for self-service operations. A self-service operation is one where goods are stocked and customers serve themselves by handling the goods. *O'Donnell v. Zupan Enter., Inc.*, 107 Wn. App. 854, 859, 28 P.3d 799 (2001). The exception applies if (1) the area where the injury occurred was self-service, (2) the hazardous condition that caused the injury was within the self-service area, and (3) the mode of operation inherently created a reasonably foreseeable hazardous condition. *Id.*

Walmart first argues that the *Pimentel* exception does not apply because the outdoor garden center was not a self-service area. We disagree. The record is undisputed that customers are permitted in the entire outdoor garden center, including the area where Mr. Craig was bitten, to gather goods they wish to purchase.

Walmart also argues its mode of operation did nothing to cause a reasonably foreseeable hazardous condition. Again we disagree. Rattlesnakes wander. As noted by Mr. Craig's expert, rattlesnakes are especially prone to wander during the spring, such as in May, when Mr. Craig was bitten. Walmart's choice to locate an outdoor garden center in its parking lot and adjacent to undeveloped land where rattlesnakes are known to live created a reasonably foreseeable hazard. The reasonably foreseeable hazard was that its customers would interact with wandering rattlesnakes hiding among the dirt, plants, and other items for sale in the outdoor garden center. It is further reasonably foreseeable that a customer, retrieving such items, might be bitten by a rattlesnake. This risk is inherent during the entire spring and summer when Walmart utilizes its outdoor garden center.

Our holding today does not impose potential liability on all self-service businesses operating in rattlesnake country. Most businesses have walls and doors that generally prevent wild animals, including rattlesnakes, from entering. Potential liability is limited to only those situations where the business owner fails to take reasonable care to prevent rattlesnake bites. *See Pimentel*, 100 Wn.2d at 49. Although Walmart addressed the steps it took to reduce various risks of animal-caused injury, Walmart neither argued below nor on appeal that its steps were sufficient to eliminate liability as a matter of law. We, therefore, express no opinion on that issue here.

No. 33985-8-III
*Craig v. Wal-Mart Stores, Inc.*

Reverse.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Fearing, C.J.

33985-8-III

KORSMO, J. (dissenting) — The majority extends liability to all landowners in the

Clarkston area simply because rattlesnakes commonly live in the region. There is no

support for that extension of landowner liability in our case law, particularly since the

majority's rule is completely at odds with the Washington Supreme Court's own

interpretation of the *Pimentel*[1] exception. I dissent.

The majority's theory is premised on two facts: (1) rattlesnakes live in the

riverbanks of the Clarkston area, and (2) Walmart runs its garden center outside in the

general vicinity of the river. That casts far too wide a net.

The self-service exception at issue finds its origins in this court's opinion in

*Ciminski v. Finn Corp.*, 13 Wn. App. 815, 537 P.2d 850 (1975), a decision that was

largely adopted by the Washington Supreme Court in *Pimentel*, 100 Wn.2d at 49-50. The

*Pimentel* court stated the difference in its ruling from that in *Ciminski*:

> The *Ciminski* decision contains language which suggests that the
> requirement of showing notice is eliminated as a matter of law for all self-
> service establishments. 13 Wn. App. at 820-21. This is not the conclusion
> we reach under the analysis adopted here; the requirement of showing
> notice will be eliminated only if the particular self-service operation of the

---

[1] *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983).

defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable.

*Id.*

Subsequent cases have refined this distinction even further. In a decision reversing this court, the Washington Supreme Court determined that the *Pimentel* self-service rule did not apply to a hazard unrelated to the self-service nature of the business:

> Because Pimentel is a limited rule for self-service operations, not a per se rule, the rule should be limited to specific unsafe conditions that are continuous or foreseeably inherent in the nature of the business or mode of operation. Risk of water dripping from a leaky roof is not inherent in a store's mode of operation.

*Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 461, 805 P.2d 793 (1991). In a subsequent case citing *Wiltse* with approval, the court summarized the self-service exception:

> There must be a relationship between the hazardous condition and the self-service mode of operation of the business. *See Wiltse.*

*Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 654, 869 P.2d 1014 (1994).

The trial court properly applied these cases when it dismissed this action at summary judgment. The rattlesnake passing through the area was no more a result of the self-service operation than was the leaky roof in the grocery store.

Plaintiff's expert hypothesized that a snake travelling between its winter and summer homes may have passed through the Walmart lot and decided to spend the night under a pallet when it became too cold to travel further that day. There was no evidence

2

that the store's garden shop was a particularly attractive location[2] for snakes to visit, let alone take up residence. It simply happened to be the nearest available shelter. Presumably, the same thing could be said about a vehicle in the parking lot or any other nearby sheltered location such as the benches on a golf course or a backyard barbecue. This pallet simply was a convenient location. It was not an attractive nuisance for snakes.

Operating a self-service business is not a basis for premises liability in the absence of notice of a dangerous condition. Only when the self-service operation creates a risk that is reasonably foreseeable does liability arise. No evidence was presented that operating a garden shop outside presented a foreseeably greater risk of rattlesnake encounters than having the parking lot did. *Pimentel* requires more than the plaintiff presented here.

The judgment should be affirmed. Accordingly, I dissent.

_____
Korsmo, J.

_____

[2] While the majority states that the garden items created a "foreseeable hazard" of rattlesnake encounters, there is no evidence in the record backing the statement. Majority at 6. Indeed, the only evidence that plaintiff presented was that rattlesnakes liked riverbank areas for their dens and that they would forage up to two miles away in the summer. There is no indication that the mulch and fertilizer bags attracted snakes or even attracted creatures that snakes feast on. The same expert indicates that snakes "might" like the empty lands adjacent to Walmart, but no one indicated that snakes had ever been found there.

3