# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Parentage of<br><br>Z.R.S.,<br><br><div align="center">A Minor Child.</div> | No.  50560-6-II<br><br>UNPUBLISHED OPINION |

WORSWICK, J. — The trial court granted Darin Stone's petition for a major modification of his and Kristina Gilliam's parenting plan for their three children.  Gilliam argues that the trial court abused its discretion by (1) admitting impermissible hearsay, (2) declining to apply a spoliation inference against Stone, and (3) granting the major modification to the parenting plan.

We hold that the trial court did not abuse its discretion.  Accordingly, we affirm.

## FACTS

Darin Stone and Kristina Gilliam entered into a final parenting plan for their three children in September, 2014.  Shortly thereafter, the children moved to Germany with Kristina and her husband, Michael Gilliam.[1]  By the terms of the parenting plan, Stone was to have the children in Washington for several weeks every summer.  However, Stone and Gilliam could not reach an agreement for the summer of 2015, so the children remained in Germany.  In April 2016, Stone brought a motion to enforce the parenting plan, and the court granted Stone additional time with the children for the summer of 2016.  When the children arrived in Washington in June 2016, they acted differently, appearing "short tempered, timid, nervous, and

---

[1] Because Kristina and Michael Gilliam share the same last name, we refer to Michael Gilliam by his first name for clarity.  No disrespect is intended.

flighty." Clerk's Papers (CP) at 30. The oldest child, D.J.S, appeared depressed, with low self-esteem and "tend[ed] towards suicide." CP at 30. He also bullied his younger siblings. The middle child, C.E.S., had developed a bed wetting problem and would lie about it to avoid "getting in trouble." CP at 30. The youngest, Z.R.S., "would react by melting down and crying and/or flying off the handle when disciplined." CP at 30.

Approximately one month after the children had arrived in Washington to stay with Stone, all three began making disclosures about domestic violence and abuse that had occurred in Germany. The children disclosed that Michael had been violent toward the children and toward Gilliam through emotional and physical abuse. Stone sought medical care and was referred to Jennifer Knight, a licensed mental health counselor. In July 2016, Knight diagnosed all three children with adjustment disorder with anxiety and dysthymia. Additionally, she diagnosed D.J.S. with depression.

In August 2016, Stone petitioned for a major modification to the parenting plan, requesting to become the custodial parent. He alleged that the abuse in Gilliam's home in Germany was harmful to the children's physical, mental, and emotional health. The matter proceeded to trial.

At the modification trial, witnesses testified to the above facts. Knight testified that she had been the clinical therapist for the Stone children following their return from Germany. Knight had met with each child individually and she stated that the children knew why they were talking with her. All three children recounted several instances of abuse and violence in their home in Germany, including a large fight between Michael and Gilliam when the military police were called. Throughout their counseling, the children consistently recounted what had

happened in Germany. Further, the children exhibited signs of trauma, fear, and exposure to domestic violence.

Knight testified that children did not appear to be coached in their responses and that parentification[2] of their mother had occurred. Knight said that the children's disclosures about abuse and home environment helped in diagnosing and treating them.

Darin and Lori Stone[3] testified to statements they heard during a domestic incident between Michael and Gilliam on January 24, 2016. Stone was on a Skype call with Gilliam discussing the children's return to the United States. Gilliam was in her vehicle in the driveway when Michael came out of the house and began angrily yelling at her, causing Gilliam to cry. Once Michael went back into the house, Stone and Gilliam discussed her going into the house to make sure the children were okay.

The Stones testified that Gilliam kept the phone call active when she went back into the house. Stone testified that Michael was yelling vulgar things and that he was very angry. Lori noted that Michael was "enraged" and shouting obscene names at Gilliam while she hysterically cried in fear. 2 Verbatim Report of Proceedings (VRP) at 262. Michael was yelling things like, "You worthless piece of s**t," "stupid b***h", and "I should hit you harder." CP at 31. The Stones also testified to hearing Gilliam crying and asking Michael to "stop hitting." CP at 31. Gilliam objected to the Stones's testimony describing Michael's statements they heard over the

---

[2] "Parentification is when children feel like they have to take care of their own parents." 1 Verbatim Report of Proceedings at 102.

[3] Because Darin and Lori Stone share the same last name, we refer to Lori Stone by her first name for clarity. No disrespect is intended.

phone as hearsay, but the trial court overruled these objections, ruling that the statements were excited utterances.

Gilliam also testified. She acknowledged the phone call she made to Stone in her car, but contended that she ended the call before entering her house to speak with Michael. She also admitted that this call took place the same day that the military police were called to the Gilliam home.

Gilliam moved for a spoliation inference against Stone regarding the call. Gilliam argued that she contended the Skype call on January 24, 2016 was brief, while the Stones testified the call lasted closer to an hour. Gilliam argued that although Stone preserved a screenshot of other Skype logs, he did not screenshot this Skype call log. If he had, then the record would be clear that the call did not occur as the Stones testified. The trial court denied the motion.

At the conclusion of trial, the trial court entered findings of fact and conclusions of law. The trial court made findings consistent with the facts stated above and also concluded that there had been a substantial change in the children's situation and that the requested change was in the children's best interest. The trial court found that Michael emotionally and physically abused the children, that the children were exposed to domestic violence, and that Gilliam failed to protect her children. Accordingly, the trial court granted the major modification and determined Stone to be the primary residential parent. Gilliam appeals.

ANALYSIS

I. HEARSAY

Gilliam argues that the trial court improperly allowed Knight to testify regarding the children's statements about domestic abuse in the home and the Stones to testify about Michael's

statements. Specifically, Gilliam argues that Knight's testimony did not meet the hearsay exception for statements made for the purposes of medical diagnosis and treatment, and the Stones's testimony regarding Michael's statements during a domestic violence incident in Germany did not meet the hearsay exception for excited utterances. We hold that the testimony was admissible.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless it falls under an exception or exclusion to the hearsay rule. ER 802. Two such hearsay exceptions are statements made for purposes of medical diagnosis or treatment and excited utterances. We review a trial court's evidentiary rulings for an abuse of discretion. *Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d 392, 437, 423 P.3d 223 (2018). A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court. *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 450, 191 P.3d 879 (2008).

A.      *Statements for Purposes of Medical Diagnosis or Treatment*

Gilliam argues that the trial court erred when it allowed Knight to "testify as to what the children stated in their sessions as it relates to issues outside the scope of medical diagnosis." Br. of Appellant at 8 (emphasis omitted). We disagree because the children's statements were used for medical diagnosis.

Hearsay statements are not excluded when "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, sensations, or the inception or general character of the cause or external sources thereof insofar as reasonably

5

No. 50560-6-II

pertinent to diagnosis or treatment." ER 803(a)(4). For ER 803(a)(4) purposes, "medical" applies to both physical and mental health, including therapy for abuse. *In re Dependency of M.P.*, 76 Wn. App. 87, 92-93, 882 P.2d 1180 (1994). Accordingly, this hearsay exception includes statements made to social workers and child abuse counselors. *Dependency of M.P.*, 76 Wn. App. at 92-93. For statements to be admissible under ER 803(a)(4), "the declarant's motive in making the statement must be consistent with the purposes of promoting treatment, and the content of the statement must be of the kind reasonably relied on by the person providing the treatment or diagnosis." *Dependency of M.P.*, 76 Wn. App. at 93.

In her opening brief, Gilliam does not contest the children's statements' reliability or treatment motive.[4] Rather, she argues only that the statements should not have been admitted because they formed the basis of Knight's nonmedical opinion testimony.[5] In other words, Gilliam argues that because the statements were used to prove factual allegations other than diagnosis, the trial court erred in allowing them.

Here, the children's statements were reasonably pertinent for diagnosis and treatment. Stone took the children to a medical doctor after they began disclosing to him the abuse that occurred. That medical doctor referred the children to Knight, a licensed mental health counselor. The children knew they were talking to a professional counselor to discuss the abuse

---

[4] In her reply brief, Gilliam contests the reliability of the children's statements to Knight for the first time. Because she raises this argument for the first time on reply and the respondent was not on notice to address it, we decline to consider it. RAP 10.3(c).

[5] Gilliam specifically argues that Knight impermissibly testified to whether the children were coached to make certain statements, whether parentification occurred, and how much domestic violence took place in the home.

6

that had occurred and to assist with moving past the trauma. Knight testified that the children's disclosures about abuse and home environment helped in diagnosing and treating them.

The therapy sessions' purpose was to understand and diagnose the results of the abuse and domestic violence as well as to treat the children's resulting mental and physical conditions. Further, Gilliam does not contest the children's statements' reliability or motive for treatment. Therefore, the trial court did not abuse its discretion when it admitted the children's statements that were made to her for the purposes of medical treatment or diagnosis.[6]

B.      *Excited Utterances*

Gilliam next argues that the trial court abused its discretion when it allowed the Stones to testify about statements made by Michael during a domestic violence incident. Specifically, Gilliam contends that Michael's statements do not meet the definition of the excited utterance exception to hearsay exclusion. We agree that Michael's statements were not excited utterances, but hold that they were not hearsay because they were not offered for the truth of the matter asserted. Thus, the trial court did not abuse its discretion in admitting them.

An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2).

Gilliam objected to the Stones's testimony describing Michael's statements they heard over the phone during a domestic violence event between Michael and Kristina Gilliam. Stone

---

[6] Gilliam does not argue that Knight's testimony was improper opinion testimony; she argues only that the children's statements should not have been admitted because they formed the basis for testimony that was not a medical diagnosis.

contended that his statements were excited utterances. The trial court overruled the hearsay objection, allowing the testimony into evidence as excited utterances.

Here, there is no evidence that Michael was responding to a startling event. Although, he was enraged and may have caused a startling event, there is no proof Michael was responding to one. Accordingly, Michael's statements do not meet the excited utterance exception. However, we may affirm the trial court on any grounds as long as the record is sufficiently developed to fairly consider the ground. RAP 2.5(a).

Here, Michael's screaming at Gilliam is not hearsay at all because his statements were not admitted for the truth of the matter asserted. The Stones testified that Michael specifically said:

What the f**k [were you] doing out there?

. . . .

. . . What the f**k [were you] doing on the phone with that piece of s**t. . . . why the f**k would you do that. . . he's a piece of s**t, you're the worst mother there is . . . you're the worst thing that's ever happened to me and I will be filing for divorce tomorrow and I'm serious this time. . . .

. . . .

. . . [You] deserved [to be hit] . . . [I] should have hit you harder for being so stupid.

. . . I should have hit you harder.

. . . worthless-piece-of-s**t mom; . . . I can't believe you would give up on your f*****g kids and just send them back to that piece-of-s**t dad. . . . I should hit you harder, you deserve that, you're a stupid b***h, you're the worst thing that's ever happened to me . . . you are the most worthless piece-of-s**t mom, I have to do everything for these kids, you do nothing for them.

You want to get in other people? . . . [H]ow about Eddie or how about all the other guys that you've screwed over the time—

. . . .

. . . [W]hat are you doing . . . . Are [you] going to post this on Facebook like you do everything else?"

1 VRP (April 17, 2017) at 66-68; 2 VRP (April 18, 2017) at 262-64.

The significance of Michael's words is simply that they were spoken, not that they were true. Stone was not attempting to prove that Michael thought Gilliam was worthless or stupid, or that he actually should have hit Gilliam harder. Michael's statements and behavior, including his rage, screaming, and hitting were relevant, not based on the truth of his statements, but because they tended to show that the children witnessed domestic abuse in the home. Because Michael's statements were not admitted for their truth, the Stones's testimony regarding the domestic violence incident was admissible, and Gilliam's argument fails.

## II. SPOLIATION

Gilliam argues that the trial court erred by declining to impose a spoliation inference against Stone for not producing Skype logs from January 24, 2016 at trial. We disagree.

"Spoliation" is the "intentional destruction of evidence." *Tavai v. Walmart Stores, Inc.*, 176 Wn. App. 122, 134, 308 P.3d 811 (2013). In determining whether to apply a spoliation inference against a party who destroyed or did not preserve evidence, we consider "the potential importance or relevance of the missing evidence" and "the culpability or fault of the adverse party." *Tavai*, 176 Wn. App. at 135. The importance of the missing evidence depends on the facts of each case. *Tavai*, 176 Wn. App. at 135.

Regarding culpability, we consider whether the party has an innocent explanation for the missing evidence or whether the party's bad faith or conscious disregard led to the loss of the

evidence. *Tavai*, 176 Wn. App. at 135. Further, we consider if the party violated some duty to preserve the evidence. *Tavai*, 176 Wn. App. at 135. However, there is no general duty to preserve evidence and "a party's negligent failure to preserve evidence relevant to foreseeable litigation is not sanctionable spoliation." *Cook v. Tarbert Logging, Inc.*, 190 Wn. App. 448, 464, 470, 360 P.3d 855 (2015). We review a trial court's refusal to apply a spoliation inference for an abuse of discretion. *Henderson v. Tyrrell*, 80 Wn. App. 592, 604, 910 P.2d 522 (1996).

Gilliam argues that because Stone took screenshots of certain texts or call logs but not others, and because he did not provide a reason as to why, then there must be a spoliation inference. Gilliam does not argue that Stone had any culpability other than negligence; rather, she argues that negligence alone would allow a spoliation inference. She is incorrect, and her argument fails. *See Cook*, 190 Wn. App. at 464, 470.

### III. MODIFICATION OF THE PARENTING PLAN

Gilliam argues that the trial court abused its discretion when it found that Stone met his burden to modify the final parenting plan because the findings are not supported by substantial evidence. In this regard, Gilliam argues *only* that because the children's and Michael's statements were inadmissible, then the remaining evidence is insufficient to modify the parenting plan. Because we hold that the trial court did not abuse its discretion when admitting the disputed evidence, we hold that substantial evidence supports the trial court's findings of fact and the findings support the conclusions of law based on the analysis above.

We affirm.

No. 50560-6-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Worswick, P.J

We concur:

Melnick, J.

Sutton, J.