[No. 38391-8-II.   Division Two.   March 9, 2010.]

Chunyk & Conley/Quad-C, *Respondent*, v. Patricia Bray, *Appellant*.

*Laurel Smith* (of *Laurel Smith and Associates PS*), for appellant.

*D. Jeffrey Burnham* (of *Johnson Graffe Keay Moniz & Wick LLP*), for respondent.

¶1 ARMSTRONG, J. — Patricia Bray sustained an industrial injury and the Department of Labor and Industries (Department) awarded her time loss compensation from April 1, 1999 through May 30, 2003. The Board of Industrial Insurance Appeals (Board) affirmed, but a jury overturned the Board's decision in superior court. Bray appeals, assigning error to the jury instructions. She argues that the jury was invited to speculate about whether her work injury caused reflex sympathetic dystrophy (RSD) and depression, even though the parties had stipulated that her injury caused those conditions, and the trial court erred by refusing a proposed jury instruction clarifying that RSD and depression were accepted conditions. She also argues that jury instruction 5 incorrectly stated the standard for determining whether a worker is entitled to time loss compensation. We agree that the jury instructions were misleading to the extent that they allowed the jury to premise its verdict on whether Bray's industrial injury caused the accepted conditions, rather than whether the accepted

conditions prevented Bray from working. Because we cannot find the error harmless, we reverse and remand.[1]

## FACTS

¶2 In July 1997, Bray began working as an administrative nurse at the Highlands Dementia Care Center in Tacoma. Highlands is owned by Chunyk & Conley Financial Service/Quad C. Later that month, Bray fractured her right wrist while playing softball. On August 25, 1997, heavy binders containing patient charts slipped and struck her cast, causing a sharp pain in her wrist. Her right arm contracted at the elbow, her hand contracted into a claw, and her whole arm was extremely sensitive. Because of her injury, she was "one-handed, slow and awkward, in pain, distracted, poor concentration, poor memory, [and] depressed." Suppl. Clerk's Papers (SCP) at 83.

¶3 The Department determined that Bray sustained an industrial injury when the binders struck her cast. The Department also determined that the injury aggravated her preexisting wrist fracture and proximately caused RSD.[2] In 2003, the Board affirmed the Department's findings.

¶4 Bray testified that she was unable to perform her job duties during regular working hours due to her injury. She began working off the clock, sleeping at the center overnight, and taking work home. Her supervisor reprimanded her for taking patient files home. Bray believed that Highlands would eventually fire her, so she quit the job in the summer of 1998. She took a new administrative nursing job in Montesano, Washington, but experienced the same limitations. In February 1999, she transferred to a facility in

---

[1] Bray also argues that the verdict was not supported by substantial evidence, the trial court erred by excluding a portion of her testimony, and the trial court erred by denying her motion for a new trial. Because we reverse and remand based on the jury instruction issue, we do not reach Bray's remaining arguments.

[2] RSD is a chronic pain condition caused by damage to the sympathetic nervous system, generally in the arms or legs.

Cathlamet, Washington. After five weeks in Cathlamet, she was fired. Bray then worked as a companion for an elderly woman, providing home care services. She was fired from that job after four months and has not attempted to work since.

¶5 In 2006, the Department determined that Bray's industrial injury caused a "temporary total disability" under RCW 51.32.090,[3] and that she was entitled to time loss compensation from April 1, 1999 through May 30, 2003. In 2007, the Board affirmed. In the appeal before the Board, the parties stipulated that Bray's industrial injury proximately caused RSD and depression. The Board also recognized that this issue had been decided in Bray's previous appeal:

> Ms. Bray has brought a previous appeal here, *In re Patricia Bray*, [Docket] No. 02 16119 (February 14, 2003). The findings of that case are *res judicata*, and may not be challenged in this proceeding. In that case, it was found: (1) that on August 25, 1997, Ms. Bray sustained an industrial injury; (2) that Ms. Bray's August 25, 1997 industrial injury was an aggravation of her previous Colles' fracture sustained on July 29, 1997; (3) that this aggravation was a proximate cause of reflex sympathetic dystrophy of the right upper extremity (also known as complex regional pain syndrome); and (4) that Ms. Bray's August 25, 1997 industrial injury and resulting reflex sympathetic dystrophy proximately caused, in part, a depressive condition.

Clerk's Papers (CP) at 163.

¶6 Despite the Department's prior order and the parties' stipulation, several doctors testified that Bray's ongoing RSD and depression were not related to her industrial injury. For example, Dr. Birkeland testified that Bray's

---

[3] A "temporary total disability" is a disability that "temporarily incapacitates a worker from performing any work at any gainful employment." *Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). A worker is entitled to time loss compensation for a temporary total disability until "recovery is so complete that the present earning power of the worker, at any kind of work, is restored to that existing at the time of the occurrence of the injury." RCW 51.32.090(3)(a).

industrial injury was "just a minor contusing injury," and he believed that she was incorrectly diagnosed with RSD:

> [L]ooking back I'm not so sure she ever had RSD. . . . The majority of patients who have been given a diagnosis of RSD never had it. I've seen many, many cases of patients who have been given that diagnosis, and when you review the medical records and everything they never had it, but they were diagnosed and treated like they did have it.

SCP at 215-16, 230-31. Dr. Schneider testified that Bray's ongoing depression was caused by preexisting chronic depression and had no relation to her industrial injury. Dr. Friedman testified, "I don't think that the injury that she sustained when some files fell on her [preexisting] fracture . . . I don't think that's what her psychological issues were about." SCP at 387-88. He testified at length about Bray's family history and concluded that "her psychiatric condition was not related to the covered injury . . . her depressive episodes were multifactorial related to her background history." SCP at 378-88, 392.

¶7 The employer appealed to the Mason County Superior Court. At trial, Bray proposed a jury instruction stating:

Accepted Conditions Instruction

(Stipulation of Parties)

Findings of the Board of Industrial Insurance Appeals

The accepted conditions resulting from Ms. Bray's industrial injury are:

1. Reflex Sympathetic Dystrophy . . . ;

2. Depression; and

3. Aggravation to her pre-existing Colles' wrist fracture.

CP at 57. The trial court declined to give her proposed instruction to the jury. The jury overturned the Board's decision, finding that Bray was not entitled to time loss compensation from April 1, 1999 through May 30, 2003.

## ANALYSIS

### I. Proposed Jury Instruction

¶8 Bray argues that her proposed instruction was necessary to clarify that the sole issue was whether her industrial injury, and the accepted conditions it caused, prevented her from working from 1999 to 2003. She argues the potential for juror confusion was heightened because much of the testimony invited the jury to speculate about whether her RSD and depression were related to her work injury. We agree.

### A. The Jury Instructions Were Insufficient

¶9 We review a trial court's refusal to give a proposed jury instruction for abuse of discretion. *Herring v. Dep't of Soc. & Health Servs.*, 81 Wn. App. 1, 27, 914 P.2d 67 (1996). Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and, when read as a whole, properly inform the jury of the applicable law. *Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002).

¶10 The issue of whether Bray's industrial injury caused RSD and depression was not before the jury. The Department had previously decided this issue, and the Board affirmed in 2003. An order from the Department is " 'final and conclusive' " unless set aside on appeal, and is " 'res judicata as to the issues encompassed within' " its terms. *Dep't of Labor & Indus. v. Fields Corp.*, 112 Wn. App. 450, 455, 45 P.3d 1121 (2002) (quoting *Abraham v. Dep't of Labor & Indus.*, 178 Wash. 160, 163, 34 P.2d 457 (1934); *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 169, 179, 937 P.2d 565 (1997) (Alexander, J., dissenting)). Furthermore, the parties stipulated that Bray's work injury caused these conditions. But the jury instructions erroneously allowed the jury to premise its verdict on whether it believed her work injury caused RSD and depression.

¶11 Instruction 4 informed the jury of the Board's material findings of fact, including its finding that Bray's industrial injury caused RSD and depression.[4] CP at 35-36. Instruction 12 then informed the jury that "[t]he findings and decision of the Board of Industrial Insurance Appeals are presumed correct. This presumption is rebuttable and it is for you to determine whether it is rebutted by the evidence." CP at 44. The instructions thus invited the jury to consider whether the evidence rebutted the accepted conditions, when the sole issue was whether those conditions prevented Bray from working. The proposed instruction would have clarified that RSD and depression were accepted conditions, and the jury was not being invited to review this finding.

¶12 The employer argues that the proposed instruction was unnecessary because the special verdict form asked a specific question that properly limited the scope of the issue before the jury. We disagree. The verdict form asked the jury to decide:

Was the Board of Industrial Insurance Appeals correct in deciding that Patricia Bray was unable to obtain or perform reasonably continuous, gainful employment in the competitive labor market from April 1, 1999 through May 30, 2003, *because of the residuals of her August 25, 1997 industrial injury*, when considered in conjunction with her age, education, work history and pre-existing disabilities?

---

[4] Instruction 4 summarized the Board's findings:

1. [Summary of the procedural history of the case]

2. On August 25, 1997, while in the course of her employment with Chunyk & Conley Financial Service/Quad C, the claimant injured her right wrist when she was carrying two heavy binders containing patient charts. . . . As a result of this traumatic event, the claimant sustained an aggravation of her pre-existing Colles' fracture, right extremity reflex sympathetic dystrophy (also known as complex regional pain syndrome), and a depressive condition.

3. The claimant is 61 years old. She is a registered nurse with 35 years in the nursing profession. On the date of her August 25, 1997 industrial injury, she had a pre-existing right wrist Colles' fracture that was disabling.

4. During the period from April 1, 1999, through May 30, 2003, inclusive, the residual effects of the claimant's August 25, 1997 industrial injury precluded her from obtaining or performing reasonable continuous gainful employment in the competitive labor market, when considered in conjunction with the claimant's age, education, work history, and pre-existing disabilities.

SCP at 2 (emphasis added). The verdict form invited the jury to determine what "the residuals" of Bray's industrial injury were. It allowed the jury to premise its verdict on whether it believed RSD and depression were "residuals" of her industrial injury, rather than whether those accepted conditions prevented her from working during the time loss period.

¶13 Our Supreme Court found jury instructions misleading under similar circumstances in *Keller*. Keller sued the city after his motorcycle and a car crashed together at an allegedly dangerous intersection. *Keller*, 146 Wn.2d at 240-41. The jury found that both motorists had acted negligently, but that the city had not. *Keller*, 146 Wn.2d at 242. Although the instructions accurately stated the law, they did not clarify that the city's negligence should be determined independently from the motorists' negligence. *Keller*, 146 Wn.2d at 250-51. Keller proposed such a clarifying instruction, but the trial court declined to give his proposed instruction to the jury. *Keller*, 146 Wn.2d at 241. The *Keller* court held that the instructions were misleading to the extent that they erroneously allowed the jury to premise the city's duty on the motorists' negligence. *Keller*, 146 Wn.2d at 250-51. Also, the instructions did not allow Keller to argue his theory of the case—that the jury could find the city was negligent even if it also found that the motorists were negligent. *Keller*, 146 Wn.2d at 250-51.

¶14 Like *Keller*, the jury instructions in this case were misleading to the extent that they allowed the jury to premise its verdict on whether Bray's industrial injury caused the accepted conditions, rather than whether the accepted conditions prevented Bray from working. The proposed instruction would have clarified this issue. Furthermore, Bray was not able to argue her theory of the case without the proposed instruction—that RSD and depression were accepted conditions, therefore the only issue is whether those conditions prevented her from working. For these reasons, we hold the jury instructions were insufficient.

## B. The Error Was Not Harmless

¶15 Even if the instructions are misleading, however, the verdict will not be reversed unless prejudice is shown. *Keller*, 146 Wn.2d at 249. An error is prejudicial if it presumably affects the outcome of trial. *Herring*, 81 Wn. App. at 23. As discussed above, the employer repeatedly elicited opinions from testifying doctors casting doubt on the causal connection between Bray's industrial injury and her RSD and depression. The jury was invited to speculate about this issue, and the instructions allowed the jury to premise its verdict on whether her work injury caused RSD and depression. Without the proposed instruction, Bray could not argue her theory of the case—that the sole issue was whether the accepted conditions prevented her from working. For these reasons, we cannot find the error harmless.

## II. JURY INSTRUCTION 5

¶16 Bray also argues that jury instruction 5 contained a misleading statement of the law:

> Appellant Chunyk & Conley or Quad C, the employer, claims that the findings and decision of the Board are incorrect in that *Ms. Bray's aggravated wrist injury and depressive condition had returned to pre-injury status* and that she was able to perform gainful employment in her field from April 1, 1999 through May 30, 2003.

CP at 37 (emphasis added). Because this issue will likely arise on remand, we address instruction 5.

¶17 The instruction is based on *6A Washington Practice: Washington Pattern Instructions: Civil* 155.02.01 (5th ed. 2005) (WPI), a pattern jury instruction that allows a party to set forth its claim.[5] Bray correctly argues that through this jury instruction, the employer misstates the standard

---

[5] WPI 155.02.01: "(Name of party) claims that the findings and decision of the Board are incorrect in that: (Set forth in simple form the exact issues raised or

for determining whether an employee is entitled to time loss compensation. Under RCW 51.32.090, a worker with a temporary total disability is entitled to time loss compensation until "the present earning power of the worker . . . is restored to that existing at the time of the occurrence of the injury." RCW 51.32.090(3)(a). The statute focuses on whether the worker's *earning capacity* has been restored to preinjury status, not whether the industrial injury has been restored to preinjury status. *See* RCW 51.32.090; *Hunter v. Bethel Sch. Dist.*, 71 Wn. App. 501, 507-09, 859 P.2d 652 (1993) (stating a "temporary total disability" is not based on whether a worker needs further treatment, but whether the worker is able to earn a wage at "any kind of reasonably continuous and generally available employment.").

### III. ATTORNEY FEES

■ ¶18 Bray requests attorney fees under RCW 51.52.130. The relevant portion of the statute provides:

> If, on appeal to the superior or appellate court from the decision and order of the board, . . . a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court.

Because Bray prevails on appeal, we award her attorney fees under this provision.

¶19 Reversed and remanded.

PENOYAR, A.C.J., and BRIDGEWATER, J., concur.

Review denied at 169 Wn.2d 1031 (2010).

---

claims asserted by the appealing party and the contentions of the responding party when appropriate. . . .)."