# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| CHERYL STREMKE, a single person; and TYE PANZONE and JAMI PANZONE, husband and wife; and UNITRIN, INC., dba UNITRIN AUTO AND HOME INSURANCE COMPANY, dba KEMPER, a foreign corporation, | No. 71424-4-I |
| Respondents, | DIVISION ONE |
| v. | |
| FISHER & PAYKEL APPLIANCES, INC., a California corporation, | |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| LOWE'S HIW, INC., a Washington Corporation, | |
| Defendant. | FILED: September 14, 2015 |

SPEARMAN, C.J. — Cheryl Stremke, her family, and her subrogating insurer, Unitrin Auto and Home Insurance Company (Unitrin),[1] brought this consumer protection and product liability action to recover losses sustained when a dryer manufactured by Fisher & Paykel Appliances, Inc. (F&P) caught fire and damaged Stremke's home and property therein. The jury found in Stremke's favor and the court entered judgment on her behalf and against F&P. F&P

---

[1] For ease of reference, the respondents are referred to as "Stremke," except where necessary.

challenges the judgment, arguing that the trial court erred when it (1) refused F&P's request for a jury instruction on spoliation; (2) excluded the testimony of F&P's expert witness on damages; (3) incorrectly instructed the jury on the measure of damages; and (4) denied its motion for directed verdict. K&P also argues that the award of attorney fees and costs was improper. We find no error and affirm.

## FACTS

On the evening of July 1, 2008, Cheryl Stremke, her son, Tye Panzone, daughter-in-law Jami Panzone, and Tye's[2] and Jami's children were preparing for bed at their home in Auburn, Washington. Around midnight, Jami smelled smoke inside the home. After investigating, she discovered smoke coming from the dryer in the family's laundry room. Jami called her husband and her mother-in-law for help. They found her in the laundry room, where the dryer was flaming and smoking badly. The family made an unsuccessful attempt to extinguish the fire with water, but the flames emerging from behind the dryer began to engulf the room. As the fire grew out of control, the family called 911 and fled from the home.

The City of Kent Fire Department responded to the 911 call and extinguished the blaze. Once it was safe to enter the house, an investigator with the fire department, Fritz Wininger, set about determining the cause of the fire. Wininger interviewed Stremke and her family and conducted a walk-through of

---

[2] The Panzones are referred to by their first names for clarity.

2

the house, during which he observed burn patterns and other evidence related to the source and cause of the fire. Based on his investigation, Wininger concluded that the fire had originated in the laundry room inside the dryer. He eliminated all other possible sources, including the dryer's ventilation system and other components in the wall behind the dryer, the dryer's power cord, the electrical outlet near the dryer, clothing inside the dryer drum, and cigarettes located in the laundry room.

The next day, Stremke notified her insurer, Unitrin. Unitrin sent its fire investigator, Thomas Miller, to the residence to determine the cause of the fire. Based on his investigation, Miller also concluded that the fire started inside the dryer and, like Wininger, he ruled out other possible sources for the fire. Miller arranged the transportation of the dryer from Stremke's house to Unitrin's Whidbey Island storage facility for testing. But, because he did not view any other items from the laundry room as relevant to the investigation, he made no effort to preserve things such as the dryer's ventilation system or electrical components.

Following Miller's investigation, Unitrin released the home back to Stremke, who arranged for repairs to the house, which commenced five to six weeks later. The fire and smoke damage to the home and the resulting restoration work were extensive. Parts of the house were gutted to the bare framing and many of Stremke's personal belongings were lost in the fire. Stremke submitted a claim to Unitrin, which paid $538,571.55 in dwelling repair and personal property costs.

Stremke and Unitrin, as the subrogating insurer, brought this product liability and consumer protection action against F&P, the manufacturer of the

3

dryer, to recover the $538,071.55 paid to Stremke by Unitrin, additional damages claimed by Stremke that her insurance company declined to pay, and claims for treble damages and attorney fees under Washington Consumer Protection Act (CPA). At the end of trial, the jury determined that a defect in F&P's dryer proximately caused Stremke's damages. It awarded $537,612 on the subrogation (product liability) claim and $537,612 on the CPA claim, but concluded that the entire CPA award was duplicative of the subrogation award. The trial court declined to award treble damages under the CPA, but awarded Stremke attorney fees and costs in the amount of $627,982.62. F&P appeals.

## DISCUSSION

### A. Spoliation

F&P contends the trial court erred when it refused to instruct the jury regarding the alleged spoliation of evidence by Stremke.[3] We review the trial court's decision regarding spoliation for abuse of discretion. Henderson v. Tyrrell, 80 Wn. App. 592, 604, 910 P.2d 522 (1996). A trial court abuses its discretion

---

[3] Specifically, F&P assigns error to the trial court's refusal to give the following instruction:

> You have heard testimony regarding the destruction of or failure to preserve evidence. If you find that Fisher & Paykel has shown that a plaintiffs have destroyed evidence which was in their control, and they have not provided a satisfactory explanation for doing so, the only inference you may draw is that the evidence, if produced, would have been unfavorable to them.

> In determining whether a party's explanation for destroying or failing to produce evidence is satisfactory, you may consider the relevance of the missing evidence to the issues in the case, whether the loss or destruction of the evidence has resulted in an advantage for one party over another, and whether the party not controlling the evidence was afforded an adequate opportunity to examine the evidence. You may also consider whether the party destroying or failing to produce the evidence acted in conscious disregard of the importance of the evidence, or whether there is some innocent explanation for the destruction.

Brief of Appellant at 22-23.

4

No. 71424-4-I/5

80 Wn. App. 592, 604, 910 P.2d 522 (1996). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Will v. Frontier Contractors, Inc., 121 Wn. App. 119, 128, 89 P.3d 242 (2004). In deciding whether to provide a remedy for spoliation, a trial court's discretion must be guided by consideration of (1) the potential importance or relevance of the missing evidence and (2) the culpability or fault of the adverse party. Taval v. Walmart Stores, Inc., 176 Wn. App. 122, 135, 307 P.3d 811 (2013); Homeworks Const., Inc. v. Wells, 133 Wn. App. 892, 899, 138 P.3d 654 (2006).

"In weighing the importance of the evidence, we consider whether the adverse party was given an adequate opportunity to examine it." Tavai, 176 Wn. App. at 135 (citing Henderson 80 Wn. App. at 605). Evidence is relevant if it is probative of a material fact in the litigation. ER 401. Here, the missing evidence (i.e., the dryer's ventilation system and related parts, as well as other items from the laundry room) was undisputedly probative of the central issue in the case— the cause of the fire—even if only to rule out possible alternative causes. And, since F&P had no opportunity to examine this evidence before it was destroyed, it was, at least arguably, important under the standard in Tavai.

F&P's argument that it was entitled to a spoliation instruction still fails, however, because it cannot show that Stremke was culpable in the destruction of the evidence at issue. In determining a party's culpability or fault in the destruction of evidence, "[w]e examine whether the party acted in bad faith or

5

conscious disregard of the importance of the evidence or whether there was some innocent explanation for the destruction." Tavai, 176 Wn. App. at 135.

In this case, approximately three weeks passed between the fire and Stremke's notice to F&P that the suspected cause of the fire was a dryer it manufactured. F&P received the notice no later than August 5, 2008 and, that same day, made arrangements to inspect the dryer, which had been moved to Unitrin's storage facility. But F&P did not inquire about any other evidence from the home, ask that any items related to other possible sources of the fire be preserved, or request that repairs to the home be postponed pending an independent evaluation. Thus, while F&P had the opportunity to advise Stremke of the potential importance of the dryer's ventilation system and other missing evidence before it was destroyed or otherwise take steps to preserve the evidence, it failed to do so.

In addition, F&P presented no evidence that Stremke had reason to know of the importance or relevance of the evidence. Her decision to not preserve additional items from the laundry room, followed determinations by two fire investigators that the fire began in the dryer and that the other items were irrelevant to the investigation. In light of this information, as well as F&P's own inaction and the passage of time, Stremke had a reasonable basis to conclude that any additional evidence in the laundry room was irrelevant to the cause of the fire and any future litigation. On these facts, F&P fails to show that Stremke acted in bad faith or in conscious disregard of the importance of the evidence when she failed to preserve it.

Another factor related to the culpability of a party who destroys evidence is whether the party violated a duty to preserve the evidence. Tavai, 176 Wn. App. at 135. F&P asserts that even if Stremke did not act in bad faith when she failed to preserve the missing evidence, she is nevertheless culpable because of an independent legal duty to preserve evidence, apart from the general duty to avoid spoliation. But F&P offers no authority for the proposition that such a duty existed.[4] In Washington, potential litigants have no general duty to preserve evidence. See Homeworks Construction, 133 Wn. App. at 901. Accordingly, we reject F&P's argument on this issue.

Because F&P failed to establish that Stremke was culpable in the destruction of the missing evidence, it was not entitled to a spoliation instruction. The trial court did not err in refusing to give one.

B. Consumer Protection Claim

At the conclusion of Stremke's case-in-chief, F&P moved for a directed verdict on her CPA claim. F&P assigns error to the trial court's denial of this motion. We review a trial court's decision to deny a motion for a directed verdict in favor of allowing a claim to be considered by a jury de novo. Hizey v. Carpenter, 119 Wn.2d 251, 271-72, 830 P.2d 646 (1992). "A directed verdict is

---

[4] In its brief, F&P argued:

Unitrin assumed an independent duty to preserve the fire scene when it sent an investigator to the fire scene one day after the fire to determine the cause and origin of the fire. In addition, that on-the-scene investigator had an independent duty under the applicable 'NFPA 921' standards of professional fire investigation to preserve the evidence at the fire scene.

Brief of Appellant at 21. Although the NFPA 921 published by the National Fire Protection Association may be the "'authoritative treatise on fire investigation,'" as the parties assert, F&P offers no authority for the proposition that a standard set forth in this guide is tantamount to a legally enforceable duty. Brief of Appellant at 21 And, F&P conceded the point in oral argument.

appropriate if, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." Chaney v. Providence Health Care, 176 Wn.2d 727, 732, 295 P.3d 728 (2013) (citations omitted).

Stremke's consumer protection claim is governed by the CPA, which prohibits "'[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . .'" RCW 19.86.020. To prevail in an action under the CPA, a plaintiff must prove five elements: (1) the conduct is unfair or deceptive; (2) occurs in trade or commerce; (3) affects the public interest; (4) causes injury and (5) to plaintiffs business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). F&P contends it was entitled to a directed verdict because Stremke provided insufficient evidence of the fourth element—causation—to support a favorable jury verdict on their consumer protection claim. We disagree.

Stremke presented several internal memos from F&P that demonstrated the corporation's awareness that its dryers experienced malfunctioning thermostats and heating elements, which could lead to dangerously high levels of heat within the dryers. She also presented evidence that the fire originated inside a dryer manufactured by F&P as a result of failed thermostats and heating elements, which overheated, igniting dryer lint. Thus, Stremke's theory of the case was that the fire and related property damage were the proximate result of design defects known to F&P at the time of the fire. Viewed in the light most favorable to Stremke, as is proper on a motion for directed verdict, the evidence

8

is sufficient to support this theory. Thus, the trial court properly refused to grant F&P's motion for directed verdict on the consumer protection claim.

## C. Personal Property Damages

F&P challenges Stremke's personal property damages award on two grounds. First, it argues the trial court abused its discretion when it excluded expert Michael Larkin's testimony on personal property damages. We disagree.

The trial court conducted an ER 104 hearing to determine whether Larkin had admissible expert testimony regarding the value of Stremke's destroyed personal and real property. At the hearing, Larkin testified that he had assessed the value of Stremke's destroyed personal property based on photographs of the scene and the several inventories that had been performed by Shawn Slings, the appraisal company employee who inventoried Stremke's personal property after the fire. Larkin admitted that he had not done a line by line analysis of the inventories to assess the value of each item listed therein. Nor had he conducted market research or otherwise investigated the prices listed in the inventories.

Instead, Larkin's opinion on the value of the damaged personal property was based entirely on changes between two versions of Slings' inventory and "a lack of documentation to support the change between the two documents. . . ." Verbatim Report Proceeding (VRP) at 955-56. He noted that comparison of the inventories indicated price discrepancies, with later inventories showing additional line items and price increases when compared to earlier versions. He also testified that, based on his review of these documents, he could not find justification for the discrepancies. And he testified that some of the items listed as

9

personal property on the inventories, particularly kitchen appliances, were also listed in the building repair estimate, which was one basis for the damages asserted in Stremke's real property damage claim. Based on these alleged accounting issues, Larkin testified that the personal property value claimed in the inventories was unreasonable. In his opinion, Stremke sustained only approximately $40,000 in property damage.

Based on this offer of proof, the trial court properly concluded that Larkin's testimony was improper opinion evidence. First, as the court noted, there was no foundation for Larkin's opinion on the value of Stremke's destroyed property. Larkin did not testify that his conclusion was based on experience, knowledge of the market, research, or any empirical method. Instead, he simply concluded that "because there's more than one [inventory and more than one estimate for repairs to the home], it can't be reasonable." VRP at 962. Second, as the trial court correctly observed, the proffered testimony was not so much an opinion on the value of the lost property as an opinion "as to credibility [Stremke's evidence] which is a jury['s] job to do." VRP at 962. The trial court did not err when it excluded the testimony.[5]

Next, F&P argues that Stremke's personal property claim should be dismissed as a matter of law because she failed to present sufficient evidence to permit the jury to determine the value of the destroyed property.

---

[5] F&P's contention that Larkin's testimony was excluded because of an order in limine prohibiting the parties from referencing evidence of insurance coverage or payments made thereunder lacks merit. As discussed above, the trial court expressly excluded Larkin's testimony based on its determination that Larkin's testimony lacked foundation, was unhelpful to the jury, and was irrelevant.

In Washington, damages are recoverable if a plaintiff can establish both the "fact of loss" and the measure of damages by competent evidence. Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 331, 858 P.2d 1054 (1993); Lewis River Golf, Inc. v. O.M. Scott & Sons, 120 Wn.2d 712, 717-18, 845 P.2d 987 (1993). Our Supreme Court has recognized that:

> [O]nce the [plaintiff] establishes the *fact* of loss with certainty (by a preponderance of the evidence), uncertainty regarding the *amount* of loss will not prevent recovery. Thus, a [plaintiff] will not be required to prove an exact amount of damages, and recovery will not be denied because damages are difficult to ascertain. . . . Generally, whether the [plaintiff] has proved his loss with sufficient certainty *is a question of fact*.

Lewis River Golf, Inc., 120 Wn.2d at 717-18 (quoting Anderson, Incidental and Consequential Damages, 7 J.L. & Com. 327, 395-96 (1987). In cases involving destroyed personal property, once the fact of loss is established, the measure of damages to the plaintiff is the value of the property at the time of loss. See, Herberg v. Swartz, 89 Wn.2d 916, 930, 578 P.2d 17 (1978); McCurdy v. Union Pac. R.R. Co., 68 Wn.2d 457, 413 P.2d 617 (1966).

The determination of the amount of damages is primarily and peculiarly within the province of the jury and under proper instructions, appellate courts are reluctant to interfere with the conclusion of a jury when fairly made. Fisons Corp., 122 Wn. 2d at 329-30. Here, the jury was properly instructed that in determining the amount of any loss attributable to the destroyed property it should take "into consideration all the circumstances and conditions," including "the cost of the items, the extent of their use, whether worn or out of date, and their condition at

the time of the fire, to determine what they were fairly worth."[6] Clerk's Papers (CP) at 2392-93; see also Herberg, 89 Wn.2d at 931. F&P contends, however, that because Stremke's evidence failed to specifically address each of the factors set out in the court's instruction, the verdict is fatally flawed and should be vacated. We disagree.

Although Shawn Slings did not expressly testify as to the value of the destroyed property, his testimony, in conjunction with the inventory he prepared that was admitted into evidence, included a description of each item, its age, and its location within the Stremke home. The inventory also noted the stores where many of the items had been purchased.

Stremke's testimony also bore on the value of the personal items destroyed in the fire. She testified that she had worked with Slings to compile the inventory and that it was a "fairly accurate" list of the clothing, toiletries, antiques, and other personal effects destroyed in the fire. She testified to the value of several "Highwaymen" paintings that had been lost in the fire. She also testified that the items listed in the inventory had been in good repair prior to the fire, aside from normal wear and tear. It is true, as F&P points out, that Stremke could not recall the purchase prices of the listed items, but she explained to the jury that although she kept receipts for a number of the items, which would have

---

[6] "When goods of this character are destroyed, a proper method of arriving at their value at the time of loss is to take into consideration the cost of the articles, the extent of their use, whether worn or out of date, their condition at the time, etc., and for them to determine what they were fairly worth." Herberg, 89 Wn.2d at 931 (quoting Kimball v. Betts, 99 Wash. 348, 352, 169 P. 849 (1918)).

established the dates of purchase and amounts paid, they were also destroyed in the fire.[7]

In addition to this testimonial evidence, the jury considered dozens of photographs of the personal property destroyed in the fire. Although some of the items depicted had been reduced to ash and rubble, in most of the photographs, the items were still recognizable, despite smoke and/or heat damage.

When the fact of loss is certain, and here it is undisputed that Stremke sustained a loss of the destroyed property, uncertainty as to the precise amount of the loss will not prevent recovery. Lewis River, 120 Wn.2d at 717-18. Here, when the evidence is viewed in the light most favorable to Stremke, there is a sufficient basis for the jury to determine the amount of damages to which Stremke was entitled for personal property destroyed in the fire, if any.

### D. Real Property Damages

F&P also challenges the jury's award of damages to Stremke for damaged real property, arguing that the jury was improperly instructed about the measure of damages. Where the refusal to give a jury instruction is based on a ruling of law, we review de novo. State v. Ponce, 166 Wn. App. 409, 415-16, 269 P.3d 408 (2012). Jury instructions must be supported by substantial evidence. Id.

F&P contends that the jury should have been instructed that an award of damages for damaged real property could not exceed the lesser of either the cost of restoring Stremke's home or the diminution of the value of the home caused by

---

[7] Stremke also testified regarding the cost to replace the items listed in the inventory. F&P contends that this testimony was improperly permitted and, by itself, is insufficient to sustain a verdict in Stremke's favor. But because there was other relevant evidence before the jury regarding this issue, any error in admitting the testimony was harmless.

the fire (the so-called "lesser than" rule). See, CP at 2315-16 (F&P's proposed "lesser than" instruction). F&P's proposed instruction mirrors the language of 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: Civil 30.11(6th ed. 2009). It is clear from the language of the instruction, the Note on Use, and caselaw interpreting the "lesser than" rule, that the rule is inapplicable in cases involving negligent destruction of real property. See e.g., Thompson v. King Feed & Nutrition Service, Inc., 153 Wn.2d 447, 454, 105 P.3d 378 (2005). However, in cases like this one, where real property and improvements thereon are only damaged,[8] not destroyed, the rule still applies. Id. at 456.

In this case, however, F&P offered no admissible evidence of the pre-fire value of Stremke's home.[9] Because this evidence was lacking, the jury could not reasonably determine either the diminution in value to the home caused by the fire or whether the diminution in value exceeded the reasonable cost of restoration. Thus, a "lesser than" instruction would have improperly invited the jury to speculate on this issue. See Chunyk & Conley/Quad C v. Bray, 156 Wn. App. 246, 255, 232 P.3d (2010). As such, the trial court properly declined to give F&P's proposed instruction.

---

[8] Despite Stremke's assertions, there was no evidence that the Stremke home was destroyed by the fire. On the contrary, the numerous photographic exhibits and the witness testimony show that, while the home was severely damaged, it was still standing and, at least in some areas, livable. See, e.g., Ex. 8:1-8:26.

[9] Although F&P notes on appeal that Stremke's home had an appraised value of $190,000 at the time of the fire, and it represented, in motions in limine, that defense expert, Larkin would testify to this valuation, as discussed previously, Larkin's testimony was excluded. F&P also proffered an appraisal report, which showed a market value of $190,000 for the Stremke home. However, this report was also excluded from evidence. Thus, F&P offered no admissible evidence of the pre-fire value of the Stremke home at trial. And no such evidence was introduced by Stremke.

E. Attorney Fees

Over F&P's objection, the trial court awarded $624,354.75 in attorney fees to Stremke as the prevailing party in a CPA claim. For several reasons, F&P argues that the trial court's entry of this award was an abuse of discretion. We disagree.

First, F&P argues that it was the prevailing party on the CPA claim and, therefore, Stremke was not entitled to an award of attorney fees under the CPA. But the jury found by special verdict that F&P violated the CPA, proximately causing damage to Stremke in the amount of $537,612. F&P argues that Stremke did not actually prevail on the CPA claim because the jury found her damages on this claim to be duplicative of those awarded under her product liability claim and Stremke is limited to one recovery. But F&P cites no authority for this proposition and we decline to ignore the jury's explicit finding in Stremke's favor on this issue.

Next, F&P contends that naming Unitrin a judgment creditor was error because Unitrin did not advance a CPA claim against F&P and because a subrogating insurer has no right to recover attorney fees. The former contention is not borne out by the record, as Unitrin expressly joined in the CPA claim in Stremke's fourth amended complaint. And F&P offers no authority for the latter.

F&P cites Dayton v. Farmers Ins. Group, 124 Wn.2d 277, 281, 876 P.2d 896 (1994), in support of its argument that Unitrin, as a subrogating insurer, was not entitled to attorney fees under the CPA. The case is unhelpful. Dayton involved a plaintiff's attempt to recover attorney fees incurred in an Uninsured

15

Motorist (UIM) arbitration from an UIM insurance carrier, pursuant to Ch. 7.04 RCW. Our Supreme Court held that, since the plaintiff would not have been able to recover attorney fees from an insured tortfeasor in litigation arising from an auto accident, a fee award in a UIM arbitration would amount to a windfall. Such an award was held improper because the UIM statute had the sole purpose of placing the insured in the same position as if the tortfeasor carried liability insurance. Id. But the present case does not involve a UIM arbitration or a fee award under Ch. 7.04 RCW. Thus, Dayton is inapposite.

Furthermore, F&P's assertion that a subrogating insurer is not entitled to bring a CPA claim in its own right or collect attorney fees in conjunction with that claim is contrary to the language of the CPA and caselaw interpreting it. See, RCW 19.86.090 (allowing "[a]ny person [including, natural persons, corporations, trusts, unincorporated associations and partnerships) see, RCW 19.86.010)] who is injured in his or her business or property by a violation" of the act to bring a CPA claim); Panag v. Farmers Ins. Co. of Washington, 166 Wn.2d 27, 43-44, 204 P.3d 885 (2009) ("a private CPA action may be brought by one who is not in a consumer or other business relationship with the actor against whom the suit is brought.")

F&P also challenges the amount of the fee award in this case, arguing (1) that the award included fees incurred for work on Stremke's other, non-CPA claims; (2) that the trial court's use of a multiplier was unreasonable; and (3) that the amount requested was patently unreasonable, given the amount in controversy. Each argument lacks merit.

Trial courts must independently determine what is a reasonable fee using the lodestar methodology. Collings v. City First Mortgage Servs., LLC, 177 Wn. App. 908, 927, 317 P.3d 1047 (2013), review denied sub nom. Collings v. City First Mortgage Servs., 179 Wn.2d 1028, 320 P.3d 718 (2014). "Under the lodestar methodology, a court must first determine that counsel expended a reasonable number of hours in securing a successful recovery for the client." Id. at 927-28. "The lodestar fee, calculated by multiplying the reasonable hourly rate by the reasonable number of hours incurred in obtaining the successful result, may be adjusted upward or downward in the trial court's discretion." Id. at 928.

F&P challenges the trial court's determination of the lodestar amount in this case: $416,235.50. At trial, F&P objected to Stremke's petition for $832,316.50 in attorney fees, in part, because the bills submitted in support of this amount included bills for work on issues unrelated to the CPA claim against F&P. The trial court agreed that only hours billed for work on the CPA claim against F&P were recoverable under the CPA; accordingly, the trial court conducted an independent examination of Stremke's bills to segregate the fees. After examining "every entry on the billing records submitted with the plaintiffs' motion," the trial court found that Stremke's fee petition should be reduced by more than $140,000, to reflect billings that could be segregated from the CPA claim and excluded from the lodestar amount.

F&P argues that Stremke failed to meet her burden to establish that she was entitled to the $416,235.50 in fees as claimed in her petition. It appears to suggest that this is because the trial court undertook the task of segregating the

recoverable fees from the non-recoverable fees, rather than requiring Stremke to submit segregated billing records to the court. But F&P does not challenge the trial court's factual findings regarding the nature of Stremke's billing records, the rates and hours listed therein, the particular billable hours that the court found were recoverable under the CPA, or the court's determination of the lodestar amount. Thus, these findings are verities on appeal. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

Moreover, it is apparent from the record that granting F&P's desired relief on appeal—"remand for a re-calculation of attorney fees, reflecting deductions in the more than 300 pages of invoices for tasks that Stremke failed to prove are eligible for a CPA fee award"—would only require the trial court to engage in the same inquiry it undertook in response to F&P's opposition to the petition for attorney fees and costs, presumably to the same end. Brief of Appellant at 38.

Next, F&P challenges the trial court's decision to apply a 1.5 multiplier to the lodestar amount in this case. Although the general rule is that the lodestar fee, without any upward adjustment, is presumed to adequately compensate an attorney for his or her services, the trial court has discretion to apply a multiplier to the lodestar, if appropriate, to reflect the contingent nature and/or quality of the representation. Henningsen v. Woldcom, Inc., 102 Wn. App. 828, 847, 9 P.3d 948 (2000).

In this case, the trial court found that Stremke's attorneys handled the case on a contingent basis. F&P seemingly assigns error to this finding, arguing that Stremke was represented by "her insurance company's attorneys, working at

18

typical hourly rates actually charged by their law firm." Brief of Appellant at 39.

But this assertion is directly contradicted by the declaration of Stremke's

attorney, submitted in support of her motion for attorney fees and costs. The

declaration attested that all the attorneys working on Stremke's case listed their

time working on the case with a specific billable rate for record keeping purposes,

but, "[d]ue to the contingency fee agreement between Unitrin and Bullivant

Houser Bailey, Bullivant Houser Bailey never actually received these fees." CP at

3653. This evidence is sufficient to sustain the trial court's finding regarding a

contingent fee agreement.

We also conclude that this finding, taken with the trial court's unchallenged

findings that:

- Plaintiffs' attorneys "put in thousands of hours necessitated by the parties' thorough litigation" and "carried the fees for over three years with no assurance of recovery;"
- "Plaintiffs' and their counsel undertook a great deal of risk in this case;"
- The case's long duration "complicated the case for Plaintiffs' counsel and kept Plaintiffs' counsel from working on other less risky cases;"
- and the plaintiffs' fee petition sought fees at an hourly rate "well below the rates charged in the Seattle legal market for the type of case here."

provides sufficient evidence to support the trial court's imposition of a 1.5

multiplier on the lodestar amount. CP at 4192-93; 4187.

Finally, F&P argues that the amount of the attorney fee award requested

by Stremke—$818,000—was patently unreasonable given the amount in

controversy in this case–$571,000. But the fact that the amount at stake in the

case was small, or that the amount of the fee award significantly exceeds the

No. 71424-4-I/20

amount at stake, is not dispositive of whether a fee award unreasonable. Collings, 177 Wn. App. at 929 (affirming an attorney fee award of over $600,000, where the plaintiffs' recovery for claims under the CPA and Credit Services Organization Act was only about $120,000); see also, 25 WPI: CONTRACT LAW AND PRACTICE 14:23 (3d ed. 2014). Accordingly, we reject F&P's argument on this issue.

Affirmed.

WE CONCUR:

Spearman, C.J.

Schindler, J.

Becker, J.

2015 SEP 14 AM 9: 5

COURT OF APPEALS
STATE OF WASHINGTON